UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAWRENCE ROSENBERG,<br><br>    Plaintiff,<br><br>        v.<br><br>UNITED STATES DEPARTMENT OF IMMIGRATION AND CUSTOMS ENFORCEMENT, *et al.*,<br><br>    Defendants. | Civil Action No. 12-452 (CKK) |

**MEMORANDUM OPINION**
(July 22, 2013)

Plaintiff Lawrence Rosenberg submitted Freedom of Information Act requests to various federal agencies seeking, among other things, records related to the raid of Agriprocessors, Inc., meatpacking plant and the subsequent prosecution of Sholom Rubashkin.[1] Dissatisfied with the agencies' responses to his request, the Plaintiff filed suit against United States Immigration and Customs Enforcement ("ICE"), the United States Marshals Service, the Executive Office for United States Attorneys, and the Federal Bureau of Investigation. Presently before the Court is ICE's [31] Motion to Dismiss or, Alternatively, Motion for Summary Judgment, and the Plaintiff's [38] Motion for Summary Judgment. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court finds the Plaintiff failed to exhaust

---

[1] See *United States v. Rubashkin*, 655 F.3d 849 (8th Cir. 2011) for an explanation of the raid on Agriprocessors and the prosecution of Mr. Rubashkin.

[2] Def.'s Mot., ECF No. [31]; Pl.'s Opp'n & Mot. for Summ. J. ("Pl.'s Cross-Mot."), ECF Nos. [37, 38]; Def.'s Reply & Opp'n to Pl.'s Cross-Mot. ("Def.'s Reply"), ECF Nos. [41, 42]; Pl.'s Reply, ECF No. [45]. The Plaintiff's Supplement, ECF No. [60] only addresses the merits of certain withholdings by various agencies, an issue the Court does not reach in the context of the Plaintiff's FOIA request to ICE.

his administrative remedies regarding the merits of his claims against ICE, and the equitable considerations cited by the Plaintiff does not warrant excusing that failure in this case. Accordingly, ICE's motion for summary judgment is GRANTED and the Plaintiff's cross-motion is DENIED AS MOOT.

## I. BACKGROUND

By letter dated September 28, 2011, the Plaintiff submitted a Freedom of Information Act ("FOIA") request to ICE seeking (among other things): (1) "any and all information relating to the raid of Agriprocessors, Inc., a meatpacking plant in Postville, Iowa, on May 12, 2008 ("the raid") and the subsequent prosecution of Sholom Rubashkin"; (2) "any and all information relating to actions proposed to take place in year 2000 against Agriprocessors, Inc., as documented in the Des Moines Register's August 6, 2011 article, 'Immigrant Raid Halted in 2000 on Election Fear, Ex-Agent Says'"; (3) "any and all information relating to any actions considered to take place against Iowa Turkey Products, Inc. of Postville, IA"; (4) "any and all information relating to the class action case *Salazar v. Agriprocessors,* 527 F. Supp. 2d 873 (N.D. Iowa 2007)"; and (5) any and all documents reflecting communications between "any government agency or official" and at least 101 identified individuals regarding Mr. Rubashkin or Agriprocessors. Pl.'s Ex. A (9/28/11 FOIA Request) at 2-7. The Plaintiff's request included 40 numbered paragraphs outlining his specific requests. *Id.*

ICE received the Plaintiff's request on October 4, 2011. Def.'s Stmt. ¶ 1.[3] ICE determined that the Plaintiff's September 2011 request was similar to a FOIA request submitted on behalf of Mr. Rubashkin by his prior counsel in fiscal year 2009, which had been the subject

---

[3] The Court shall refer to ICE's Statement of Material Facts ("Def.'s Stmt."), or directly to the record, unless a statement is contradicted by the Plaintiff, in which case the Court may cite to Plaintiff's Response to the Statement of Material Facts ("Pl.'s Resp. Stmt.").

of litigation between Mr. Rubashkin and ICE. Def.'s Stmt. ¶¶ 2-3. In particular, ICE determined that the first 15 paragraphs sought information similar to that at issue in the 2009 request, though the remaining 25 paragraphs were unrelated to the earlier request. *Id.* at ¶¶ 5-6; *see also* Pl.'s Ex. B (2/5/09 FOIA Request). ICE instructed three separate offices to conduct searches for records responsive to the remaining 25 paragraphs unrelated to the 2009 request. *Id.* at ¶ 7.

ICE provided its initial response to the Plaintiff's September 2011 request on January 3, 2012, purporting to enclose the documents released in response to the 2009 request. Def.'s Stmt. ¶¶ 9-13. The parties dispute whether the January 2012 production included *all* of the documents released in response to the 2009 request. Def.'s Stmt. ¶ 10; Pl.'s Resp. ¶ 10. ICE issued its final response to the Plaintiff's request on February 16, 2012. Law Decl., Ex. A (2/16/12 Ltr. to Pl.). ICE indicated that it had located 166 pages and three spreadsheets responsive to the Plaintiff's request. *Id.* at 4. ICE withheld portions of 155 pages and each of the three spreadsheets "pursuant to exemptions (b)(5), (b)(6), (b)(7)(C) and (b)(7)(E) of the FOIA." *Id.*; *see also id.* at 4-5 (explaining the exemptions in detail). The agency also determined that information responsive to paragraphs 13, 14, 15, 33, and 34 of the Plaintiff's request, "if the records exist, would be under the purview of the Department of Justice, Executive Office of Unite[d] States Attorneys," and provided contact information for the Executive Office. *Id.* at 5. The letter informed the Plaintiff that if he wished to appeal ICE's withholding determination, he must do so within 60 days. *Id.*

The Plaintiff appealed ICE's final response to his request through a letter dated March 16, 2012. Law Decl., Ex. B (3/16/12 FOIA Appeal). The Plaintiff argued that "[t]he 2011 request fully encompassed and expanded upon the 2009 request," but "ICE's response to the 2011 request included far less information than the response to the 2009 request." *Id.* at 1. The

Plaintiff also suggested ICE "excessively redacted documents that were produced," misapplied certain exemptions, and "provided insufficient explanations for withholding information." *Id.* at 2-3. The Plaintiff requested that ICE "[f]ully respond to the 2011 request," "[r]e-evaluate the use of exemptions," and "[w]here there is [sic] statutory basis for redaction, produce a *Vaughn* list explaining the withheld information and justifying the withholding." *Id.* at 4. The Plaintiff's appeal letter further indicated that "[i]f no commitment has been provided by March 22, 2012, Mr. Rubashkin will seek court enforcement of his request." *Id.*

ICE received the Plaintiff's appeal on March 19, 2012, and acknowledged the appeal in a letter dated March 22, 2012. Def.'s Stmt. ¶¶ 22-23; Law Decl., Ex. C (3/22/12 Ltr. to Pl.). The letter indicated the Department of Homeland Security had received the Plaintiff's appeal and assigned the appeal number OPLA12-453. Law Decl., Ex. C. The letter indicated that "[a] high number of FOIA/PA requests have been received by the Department," and the agency has "adopted the court-sanctioned practice of generally handling backlogged appeals on a first-in, first-out basis," although appeals of expedited treatment denials are handled on an expedited basis. *Id.* The letter informed the Plaintiff that "[w]hile we will make every effort to process your appeal on a timely basis, there may be some delay in resolving this matter." *Id.*

According to ICE, the Plaintiff called the ICE FOIA office on March 23, 2012, inquiring as to when he would receive a response to his appeal. Def.'s Stmt. ¶ 25. ICE informed the Plaintiff that it had just received the Plaintiff's appeal that week, and the Plaintiff purportedly responded by threatening to file suit over ICE's "slow" response, and hung up. *Id.* at ¶ 26.[4] The

---

[4] Inexplicably, the Plaintiff denies the Defendant's characterization of this conversation in his response to the Defendant's statement of facts, but does not offer his own version of events until his Reply brief. *See generally* Pl.'s Reply, Ex. C. (Suppl. Rosenberg Decl.). The issue was squarely presented in the Defendant's initial brief, therefore the Court, shall not consider the

Plaintiff filed suit that same day, alleging "ICE informed [the Plaintiff] that it was not prepared to give any timetable for the resolution of Mr. Rosenberg's appeal." Compl., ECF No. [1], ¶ 26. Pursuant to 6 C.F.R. § 5.9(a)(3), ICE administratively closed the Plaintiff's appeal after he filed suit. Law Decl., Ex. D (4/13/12 Ltr. to Pl.); *see* 6 C.F.R. § 5.9(a)(3) ("An appeal ordinarily will not be acted on if the request becomes a matter of FOIA litigation.").

ICE moves to dismiss the Plaintiff's Complaint or in the alternative for summary judgment on the grounds the Plaintiff failed to exhaust his administrative remedies. For his part, the Plaintiff moves for summary judgment, arguing that ICE failed to conduct an adequate search for potentially responsive documents and seeks an order compelling ICE to produce a Vaughn index for all redacted documents.

## II. LEGAL STANDARD

ICE moves to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The administrative exhaustion requirement under the Freedom of Information Act is not jurisdictional, therefore Rule 12(b)(1) is inapplicable to the present motion. *Ivey v. Paulson*, 227 F. App'x 1 (D.C. Cir. 2007). Furthermore, Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) [] matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Here, both parties rely on evidence outside the pleadings to support their respective positions regarding the Defendant's motion to dismiss for failure to state a claim. Therefore the Court will treat Defendant's motion as a motion for summary judgment. *Colbert v. Potter*, 471 F.3d 158, 167–68 (D.C. Cir. 2006).

---

evidence provided for the first time in the Plaintiff's Reply *See, e.g.*, *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008). In any event, the precise nature of the March 23 conversation is irrelevant to the disposition of ICE's motion.

*A.     Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials); or
>
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). When considering a motion for summary judgment, the court may not make credibility determinations or weigh the evidence; the evidence must be analyzed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Liberty Lobby*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment." *Id*.  For a dispute about a material fact to be "genuine," there must be sufficient admissible evidence that a reasonable trier of fact could find for the nonmoving party.  *Id.*  The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.  "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Id*. at 249–50 (internal citations omitted).  The adverse party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute.  *See Ass'n of Flight Attendants–CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009).

        B.       *Exhaustion of Administrative Remedies & the Freedom of Information Act*

Under the Freedom of Information Act, "[e]xhaustion of administrative remedies is generally required before seeking judicial review 'so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.'" *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)).  In this context, the doctrine is "jurisprudential" and "not jurisdictional." *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003).  Generally speaking, a plaintiff's "failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." *Id*. at 1258–59 (quoting *Oglesby*, 920 F.2d at 61).  The exhaustion requirement ensures that "the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision. *Oglesby*, 920 F.2d at 61.

## III. DISCUSSION

The Freedom of Information Act requires an agency to

> make a determination with respect to any appeal within twenty days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of such appeal. If on appeal the denial of the request for records is in whole or in part upheld, the agency shall notify the person making such request of the provisions for judicial review of that determination under paragraph (4) of this subsection.

5 U.S.C. § 552(a)(6)(A)(ii). The Plaintiff filed suit on the fourth business day after ICE received the Plaintiff's letter appealing the agency's final response to the Plaintiff's September 2011 FOIA request. The Plaintiff argues that he actually exhausted his administrative remedies because ICE's March 22, 2012, letter constituted a denial of his request to expedite his appeal. In the alternative, the Plaintiff contends the Court should excuse any failure to exhaust his administrative remedies because any appeal would have been futile and the Plaintiff's client faces irreparable harm if exhaustion is required. For the reasons set forth below, even if ICE's March 22, 2012, letter constituted a denial of the Plaintiff's request to expedite his appeal, the Plaintiff failed to exhaust his administrative remedies as to the underlying merits of his appeal. Furthermore, the equitable considerations in this case do no warrant excusing the Plaintiff's failure to exhaust his administrative remedies.

### A. *Plaintiff Failed to Exhaust His Administrative Remedies*

In the administrative setting, two conditions must be met in order for an agency action to be final: (1) "the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature"; and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Appalachian Power Co. v. EPA*, 208 F.3d 1015, 1022 (D.C. Cir. 2000). ICE's March 22, 2012, letter acknowledging the Plaintiff's appeal fails to satisfy either element.

The Plaintiff argues that ICE's March 22 letter "was the culmination of agency decision-making" because the letter was signed on behalf of Susan Mathias, the Chief of the Government Information Law Division at the ICE Office of the Principal Legal Advisor in the Department of Homeland Security. Pl.'s Cross-Mot. at 6. The signatory is irrelevant at this point when the only thing the letter purported to do was to acknowledge receipt of the Plaintiff's appeal and indicate there may be some delay in processing the appeal. The letter did not purport to address any of the substantive issues raised in the Plaintiff's appeal. Rather, Ms. Mathias issued "ICE's standard appeal acknowledgment letter, similar to hundreds of other appeal acknowledgment letters that ICE sends each year." Suppl. Law Decl. ¶ 22.

In his cross-motion, the Plaintiff emphasizes that "[r]ather than wait through its statutorily-granted 20 days, ICE sent Plaintiff its determination only six days after Plaintiff wrote it." This argument assumes that which the Plaintiff seeks to prove: that the Mach 22 letter was a determination by the agency. The fact that "ICE's letter spoke to Plaintiff's time concerns, even though it made clear that it would not act in an urgent or expedited manner" at best means the letter constituted the consummation of the agency's decisionmaking process as to the timing of the Plaintiff's appeal. The letter did not purport to convey *any* agency position regarding the merits of the Plaintiff's appeal, much less the agency's final decision.

The Plaintiff suggests that "ICE's refusal to act urgently was tantamount to a final agency action" on the merits of his appeal. Pl.'s Cross-Mot. at 6. The Plaintiff cites to the D.C. Circuit's decision in *Environmental Defense Fund, Inc. v. Hardin*, 428 F.2d 1093 (D.C. Cir. 1970), which held that an agency's inaction on a request for interim suspension of registration of products containing the pesticide DDT "is the equivalent of an order denying relief." *Id.* at 1099. The court explained that "[t]he suspension power is designed to protect the public from an

'imminent hazard'; if petitioners are right in their claim that DDT presents a hazard sufficient to warrant suspension, then even a temporary refusal to suspend results in irreparable injury on a massive scale." *Id.* No such "imminent hazard" existed in this case: the Plaintiff merely indicated that Mr. Rubashkin "hope[d] to use any responsive information in court proceedings with strict time limits on filing." Law Decl., Ex. B at 4. The Plaintiff did not assert that any of those time limits were forthcoming. Moreover, the Plaintiff waited over four weeks after the agency submitted its final response to his request before filing an appeal. Even now the only filing deadline identified by the Plaintiff is October 1, 2013, but this deadline was not known by the Plaintiff at the time he filed his appeal with ICE. There is no basis in the record to conclude that Mr. Rubashkin faced any "imminent hazard" such that ICE's March 22, 2012, letter constituted a denial of the merits of appeal.

For the same reason, the Plaintiff's suggestion that the March 22 letter "meets the 'creates legal consequences' test of a final agency action," is meritless. Pl.'s Cross-Mot. at 7. The Plaintiff does not claim (much less show) that the agency's refusal to expedite his appeal precluded Mr. Rubashkin from using responsive materials in court filings, or had any other legal consequence for the Plaintiff.

Assuming *arguendo*[5] ICE's March 22, 2012, letter amounted to a denial of a request for expedited consideration of the Plaintiff's appeal, at best the Plaintiff has exhausted his

---

[5] The Court emphasizes that it assumes without deciding that the Plaintiff exhausted his administrative remedies with respect to his "request" for expedited processing of his appeal. As ICE notes, the Plaintiff's March 16 appeal failed to comply with the agency's regulations governing requests for expedited treatment of appeals. *See* 6 C.F.R. § 5.5(d). Thus, the Plaintiff arguably failed to exhaust his administrative remedies even as to his request for expedited processing. *See Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003); *Flaherty v. President of the U.S.*, 796 F. Supp. 2d. 201, 207 (D.D.C. 2011) ("Where a request does not comply with published regulations, the FOIA claim is subject to dismissal for failure to exhaust administrative remedies.").

administrative remedies *as to the request for expedited treatment of his appeal*.[6] As the D.C. Circuit has explained, even if a party files a timely appeal, if the agency is not provided an opportunity to address the merits of the party's appeal, "it d[oes] not promote the purposes of the exhaustion doctrine." *Hidalgo*, 344 F.3d at 1259. Hidalgo filed an appeal *before* the FBI acted on his FOIA request, and thus technically appealed within the time frame set forth by the FBI's regulations. *Id.* at 1259. However, because Hidalgo filed the appeal before the FBI responded to his request "the appeal could not and did not place the substance of the FBI's response before the OIP. Thus, the OIP had no opportunity to consider the very issues that Hidalgo has raised in court: whether the requested information is covered under FOIA Exemptions." *Id.* The court concluded that Hidalgo's premature appeal "'cut off the agency's power to correct or rethink initial misjudgments or errors,'" thus "frustrat[ing] the policies underlying the exhaustion requirement." *Id.* at 1260 (quoting *Oglesby*, 920 F.2d at 64).

Similarly, even if a party exhausts his administrative remedies as to a particular aspect of his claim, the court's review is limited to those objections and arguments that were subject to full administrative review. *Dettman v. U.S. Dep't of Justice*, 802 F.2d 1472, 1477 (D.C. Cir. 1986) ("In the course of the years of communications back and forth between requester and agency, Dettmann made no attempt to present for administrative review any objections she may have had to the FBI's handling of 'see' reference documents. If exhaustion of remedies is to have meaning, it surely must bar review of the claim advanced here."). For example, in *Porter v. CIA*,

---

[6] ICE argues that Plaintiff should be barred from arguing that he requested expedited review because "Plaintiff never made such a claim in his Complaint or indeed, any previous submissions to this Court." Def.'s Reply at 8. However, the Defendant offers no explanation as to why the Plaintiff was required to include this allegation in his Complaint when the Plaintiff is not seeking review by this Court of the denial of his (alleged) request for expedited review. Pl.'s Reply at 2 ("Plaintiff is not asking this Court to expedite its proceedings or to remand and order expedited treatment.").

778 F. Supp. 2d 60 (D.D.C. 2011), Judge James E. Boasberg explained that although Porter administratively appealed the adequacy of the search conducted by the agency, "[a]t no point during the appeal process did Plaintiff ever aver that he was appealing the timeframe of the search." *Id.* at 68. "Because he failed to do so," the court found that summary judgment on the issue of the timeframe of the search was "consistent with the purposes of exhaustion and FOIA's detailed administrative scheme." *Id.*

> Failure to exhaust administrative remedies is not a mere technicality, and a court must decline to decide the merits of an unexhausted FOIA claim when the plaintiff fails to comply with procedures for administrative review, denying the agency an opportunity to review its initial determination, apply its expertise, correct any errors, and create an ample record in the process.

*Nat'l Sec. Counselors v. CIA*, --- F. Supp. 2d ---, 2013 WL 1141768, at *13 (D.D.C. Mar. 20, 2013). Here, the Plaintiff filed suit just three days after ICE received his appeal and before the agency had the opportunity to consider any of the Plaintiff's substantive arguments regarding the scope of the agency's search, applicability of certain withholdings, and need for a *Vaughn* index. The Plaintiff filed suit before the agency issued a final determination on the merits of his appeal, and weeks before the agency was required by statute to issue a final determination, thus denying the agency the opportunity to review its initial determination, correct any errors, or create an adequate record. Accordingly, the Court finds the Plaintiff failed to exhaust his administrative remedies as to the substantive objections he raises to ICE's response to his FOIA request.

   B.  *Equitable Considerations Do Not Warrant Excusing the Exhaustion Requirement*

The Plaintiff contends that even if, as the Court concludes, he failed to exhaust his administrative remedies, the Court should excuse that failure for two reasons: (1) exhaustion of his administrative remedies would have been futile; and (2) "Plaintiff's client Sholom Rubashkin will suffer irreparable harm if he cannot get judicial review very soon." Pl.'s Cross-Mot. at 8.

Neither argument is sufficient to justify excusing the Plaintiff's failure to exhaust his administrative remedies in this case.

With respect to the futility issue, the Plaintiff cites no authority demonstrating that the futility exception applies to the administrative exhaustion requirement under the FOIA.[7] Courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[B]inding Circuit precedent could not be clearer: exhaustion of administrative remedies 'is a mandatory prerequisite to a lawsuit under FOIA.'" *Freedom Watch, Inc. v. CIA*, 895 F. Supp. 2d 221, 227 n.2 (D.D.C. 2012) (quoting Wilbur, 355 F.3d at 676); *but see Armstrong v. Bush,* 807 F. Supp. 816 (D.D.C. 1992).

Assuming the futility exception applied in the FOIA context, exhaustion may only be excused "where it would be 'futile because of certainty of an adverse decision.'" *Armstrong*, 807 F. Supp. 816 (D.D.C. 1992) (quoting *James v. U.S. Dep't of Health & Human Servs.*, 824 F.2d 1132, 1138 (D.C. Cir. 1987)). The Plaintiff avers that Venetia Bell, former counsel for the Defendants in this action, informed the Plaintiff that "ICE would not agree to search for or produce any additional documents and would not agree to prepare a *Vaughn* declaration." Pl.'s Ex. C (Rosenberg Decl.) ¶ 6; *id.* at ¶ 8 ("Ms. Bell made clear that ICE would not change its position absent a judicial order."). However, Ms. Bell's communications with ICE indicate that the agency did not intend to change its position until after the Court ruled on the exhaustion issue. Def.'s Reply, Ex. 2 (Email E. Clifford to V. Bell). Erin Clifford, an associate legal

---

[7] Rather, the Plaintiff's Cross-Motion cites *Jasperson v. Federal Bureau of Prisons*, 460 F. Supp. 2d 76 (D.D.C. 2006), and *American Council of the Blind v. Snow*, 311 F. Supp. 2d 86 (D.D.C. 2004), which applied the futility exception in the context of the Administrative Procedures Act and the Rehabilitation Act, respectively. *Jasperson*, 460 F. Supp. 2d at 87; *Snow*, 311 F. Supp. 2d at 90.

advisor with the Government Information Law Division, Office of the Principal Legal Advisor to ICE, explained ICE's position as follows:

> We released all documents that were responsive to this FOIA request that were previously released in the associated litigation that they filed on this request back in 2009. They are not missing anything from the previous release. They will need to be more specific and point to something more than just a FOIA request, otherwise ICE is done with searching and production in this case.
>
> If they will not narrow the exemption challenges, ICE FOIA can begin working on a Vaughn for this case, but we still expect to make the non-exhaustion argument first. In addition, prior to beginning the Vaughn ICE would like to have a better sense of the timeline of the case. We would need until Dec. to do a full Vaughn, although we have a categorized Vaughn for the prior FOIA documents created already that was released in the litigation in 2009. We can provide that as soon as they would want it (after our exhaustion argument though), and maybe then they can narrow the challenges?
>
> And ICE is still unclear as to what specifically they are challenging regarding the search.

Def.'s Reply, Ex. 2 at 1. Mr. Clifford's email demonstrates that even now the agency's position with respect to the Plaintiff's appeal is not certain, much less certain to be adverse. The fact that the agency has elected to await the Court's disposition of the present motions before drafting a *Vaughn* index or otherwise reconsidering its response to the Plaintiff's request does not show futility. Furthermore, the fact that the Defendant did not offer a declaration from Ms. Bell regarding her conversation(s) with the Plaintiff is irrelevant. Regardless of what Ms. Bell did or did not say to the Plaintiff, the agency itself has indicated that it is willing to produce a *Vaughn* index and reconsider certain issues if additional information is provided by the Plaintiff. On this record, the Plaintiff failed to establish administrative exhaustion of his remedies would have been futile.

The Plaintiff further argues that the Court should excuse his failure to exhaust his administrative remedies because if the Plaintiff does not receive ICE's documentation soon, he

will be unable to use it as part of a motion to vacate Mr. Rubashkin's sentence pursuant to 28 U.S.C. § 2255. As with his futility argument, the Plaintiff offers no legal authority for the proposition that the Court can excuse the requirement that the Plaintiff exhaust his administrative remedies before seeking judicial review of an agency's response to his FOIA request. Furthermore, in lamenting the amount of time that has elapsed since the Plaintiff submitted his request to ICE, the Plaintiff omits the fact that rather than file suit after ICE failed to initially comply with the statutory deadlines, he waited over five months for the agency to respond. Once the agency issued its final response, the Plaintiff waited a month before filing his appeal and the Plaintiff did not perfect service of process until two months after filing the Complaint in this case. As the Plaintiff notes, "[a]n adverse decision on exhaustion would, at worst, result in a re-filing of the same FOIA request." Pl.'s Cross-Mot. at 13. The Plaintiff could have re-filed his request and exhausted his administrative remedies before the parties completed briefing the present motion.

The Plaintiff's suggests that Mr. Rubashkin has already suffered irreparable injury due to ICE's delay in processing the Plaintiff's request, stating that "[s]ubsequent to making his September 28, 2011 FOIA request, Mr. Rubashkin was forced to mount an appeal to the Eighth Circuit. He lost." Pl.'s Reply at 17. This assertion is incredibly misleading if not outright false. The docket indicates Mr. Rubashkin's direct appeal was fully briefed on April 19, 2011, argued and submitted on June 15, 2011, and denied by the Eighth Circuit on September 16, 2011—twelve days *before* the Plaintiff filed his FOIA request with ICE. Mr. Rubashkin filed a petition for rehearing on October 11, 2011, only one week after ICE received the Plaintiff's FOIA request. The petition for rehearing was denied on November 3, 2011, beginning the clock for the Plaintiff to file a petition for a writ of certiorari. ICE did not respond to the Plaintiff's request

within the statutory deadline, yet the Plaintiff did not file suit.  Instead, the Plaintiff waited for the agency's final response, which did not come until February 2012.  The Plaintiff then waited a month after the agency issued its final response before pursuing an administrative appeal.  The Plaintiff was complicit in the delay that prevented Mr. Rubashkin from utilizing any documents from ICE as part of Mr. Rubashkin's petition for a writ of certiorari.

Moreover, the "irreparable injury" alleged in this case is that the Plaintiff's client would be unable to use any information obtained from ICE (if the Plaintiff proved successful in this matter) as part of a collateral attack on Mr. Rubashkin's conviction.  If the Plaintiff were to obtain newly discovered evidence from a successful challenge to ICE's response, the Plaintiff could amend his initial section 2255 motion (if still pending), or file a second motion, albeit with additional procedural hurdles.  *See* 28 U.S.C. § 2255(h).  On the present record, the agency's interest in having the opportunity to correct its own errors and create an adequate record for review outweigh the Plaintiff's interest in immediate judicial review, particularly in light of the Plaintiff's extensive delay in pursuing his own claims.  *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992).  Therefore, even if it has the authority to do so, the Court declines to excuse the Plaintiff's failure to exhaust his administrative remedies.

## IV. CONCLUSION

For the foregoing reasons, the Court finds the Plaintiff failed to exhaust his administrative remedies regarding his claim against United States Immigration and Customs Enforcement.  Even if the agency denied the Plaintiff's request for expedited processing of his appeal, the Plaintiff failed to exhaust his administrative remedies as to the merits of his objections to ICE's response to his FOIA request.  Furthermore, the Plaintiff offers no authority for the proposition that the Court can excuse the Plaintiff's failure to exhaust because of futility or irreparable

injury.  Regardless, the Plaintiff failed to establish that further administrative review of his claims would have been futile, or that his client will suffer irreparable injury absent immediate judicial review.  Therefore, ICE is entitled to summary judgment on the grounds the Plaintiff failed to exhaust his administrative remedies before seeking judicial review, and the Plaintiff's cross-motion for summary judgment is moot.  An appropriate Order accompanies this Memorandum Opinion.

                                                                     */s/*
                                        **COLLEEN KOLLAR-KOTELLY**
                                        UNITED STATES DISTRICT JUDGE