# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

LAWRENCE ROSENBERG,

    Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

    Defendants.

**Civil Action No. 12-452 (CKK)**

## MEMORANDUM OPINION
(July 23, 2013)

Plaintiff Lawrence Rosenberg submitted Freedom of Information Act requests to various federal agencies seeking, among other things, records related to the raid of Agriprocessors, Inc., meatpacking plant and the subsequent prosecution of Sholom Rubashkin.[1]  Dissatisfied with the agencies' responses to his request, the Plaintiff filed suit against United States Immigration and Customs Enforcement, the United States Marshals Service (the "Marshals Service"), the Executive Office for United States Attorneys (the "EOUSA"), and the Federal Bureau of Investigation.  Presently before the Court is the EOUSA and Marshals Service's [27] Motion to Dismiss, or Alternatively, Motion for Summary Judgment, and the Plaintiff's [36] Cross-Motion for Summary Judgment.  Upon consideration of the pleadings,[2] the relevant legal authorities, and

---

[1]  See *United States v. Rubashkin*, 655 F.3d 849 (8th Cir. 2011) for an explanation of the raid on Agriprocessors and the prosecution of Mr. Rubashkin.

[2]  Defs.' Mot., ECF No. [27]; Pl.'s Opp'n & Cross-Mot. ("Pl.'s Cross-Mot."), ECF Nos. [35, 36]; Defs.' Reply & Opp'n to Pl.'s Cross-Mot. ("Defs.' Reply"), ECF Nos. [39, 40]; Pl.'s Reply, ECF No. [44].  The Plaintiff's Supplement, ECF No. [60], addresses only the merits of certain withholdings by various agencies, an issue the Court does not reach in the context of the Plaintiff's FOIA requests to the EOUSA and the Marshals Service.

the record as a whole, the Court finds that because the Plaintiff failed to pay the reasonable search fees requested by the EOUSA for request number 2011-3284, and failed to exhaust his administrative remedies for requests numbered 2011-3285 and 2011USMS18477.  Accordingly, the EOUSA and the Marshals Service are entitled to summary judgment.

## I. BACKGROUND

By letter dated September 28, 2011, the Plaintiff submitted a Freedom of Information Act ("FOIA") request to the EOUSA seeking, among other things: (1) "any and all information relating to the raid of Agriprocessors, Inc., a meatpacking plant in Postville, Iowa, on May 12, 2008 ("the raid") and the subsequent prosecution of Sholom Rubashkin"; (2) "any and all information relating to actions proposed to take place in year 2000 against Agriprocessors, Inc., as documented in the Des Moines Register's August 6, 2011 article, 'Immigrant Raid Halted in 2000 on Election Fear, Ex-Agent Says'"; (3) "any and all information relating to any actions considered to take place against Iowa Turkey Products, Inc. of Postville, IA"; (4) "any and all information relating to the class action case *Salazar v. Agriprocessors,* 527 F. Supp. 2d 873 (N.D. Iowa 2007)"; and (5) any and all documents reflecting communications between "any government agency or official" and over 101 individuals regarding Mr. Rubashkin or Agriprocessors.  Vanek Decl., Ex. A (Pl.'s FOIA Request to EOUSA), at 2-7.  The Plaintiff's request included 40 numbered paragraphs outlining his specific requests.  Defs.' Stmt., ECF No. [27], ¶ 2.[3]  The Plaintiff also submitted a signed privacy waiver by Mr. Rubashkin authorizing the EOUSA to release documents concerning Mr. Rubashkin, but did not submit privacy waivers

---

[3]  The Court shall refer to the EOUSA and Marshals Service's (collectively the "Defendants") Statement of Material Facts ("Defs.' Stmt."), or directly to the record, unless a statement is contradicted by the Plaintiff, in which case the Court may cite to Plaintiff's Response to the Statement of Material Facts ("Pl.'s Resp. Stmt.") where appropriate.

for any other individual referenced in the Plaintiff's request.  *Id.* at ¶¶ 5-6.

EOUSA notified the Plaintiff on October 3, 2011, that his request had been split into 2 separate requests with two separate request numbers:

- Request No. 2011-3284: "Agriprocessors, Inc. (Corp.Docs. Only)& Sholom Rubashkin; and

- Request No. 2011-3285: "(Third Parties)"

Brandon Decl., Ex. C (10/3/11 Ltr. to Pl. re Request No. 2011-3284) at 2 (all errors in original). The letter further indicated that request number 2011-3284 would be processed in the order in which it was received, unless it is a very large request, in which case it would be placed in the "Project Requests" group and processed in the order received.  *Id*. at 1.  Under separate cover that same day, with respect to request number 2011-3285, the EOUSA informed the Plaintiff:

> It is the policy of the Executive Office neither to confirm nor deny that records concerning living third parties exist.  Further, any release to you of such records, if they do exist, would be in violation of the Privacy Act.  5 U.S.C. § 552a.  The requested material would also be exempt from release pursuant to 5 U.S.C. § 552(b)(6) and/or (b)(7)(C) which pertain to records whose disclosure would result in an unwarranted invasion of personal privacy.

Brandon Decl., Ex. B (10/3/11 Ltr. to Pl. re Request No. 2011-3285).  The letter advised the plaintiff that "[t]his is a final action" on request number 2011-3285, and any appeal must be received by the Office of Information Policy within 60 days of the date of the letter.  *Id.*  The Plaintiff did not file an administrative appeal of the EOUSA's decision regarding request number 2011-3285.  Defs.' Stmt. ¶ 10.

In response to request number 2011-3284, the EOUSA directed the United States Attorney's Office for the Northern District of Iowa ("USAO/NDIA") to conduct a search of physical and electronic records in response to the Plaintiff's request.  Defs.' Stmt. ¶ 13. USAO/NDIA provided to the Executive Office an outline of the search efforts it would need to

3

undertake in response to the Plaintiff's request, and estimated at least 18,738 hours of search time would be required to search the its physical records.  *Id.* at ¶¶ 14-15.  The USAO/NDIA concluded that such extensive search efforts would be required because, among other things, enforcement action against Agriprocessors resulted in approximately 305 cases and involved the majority of employees in the USAO/NDIA, and a substantial number of documents were sent to the Litigation Technology Service Center to be digitized.  *Id.* at ¶¶ 16-17.  The estimate did not include time needed to search archived emails of former and current USAO/NDIA employees, and the files of four previous United States Attorneys who might have responsive records.  *Id.* at ¶ 18.  The Information Technology department for the EOUSA estimated that it would cost approximately $158,000 to restore back-up tapes that may contain email or other electronic records responsive to the Plaintiff's request.  *Id.* at ¶¶ 19-22; *see also id.* at ¶¶ 23-27 (providing estimates based on specific types of back-up tapes at issue).  The EOUSA further approximated that it would cost $37,684.68 to extract recent emails archived in an "Integrated Archive Platform."  *Id.* at ¶¶ 28-30.  Overall, the EOUSA estimates that "the cost of hosting and processing the data into a database where search terms could be applies would be approximately $120,000.00," based on an estimate of 1500 staff hours.  *Id.* at ¶ 31.

The Plaintiff filed suit on March 22, 2012.  On June 8, 2012, the EOUSA notified the Plaintiff via letter that "[d]ue to the size of your request and the time period from which you seek records, it will be necessary to restore at least 33 backup tapes containing potentially responsive records."  Vanek Decl., Ex. G (6/8/12 Ltr. to Pl.) at 1.  The EOUSA indicated that approximately "462.9 hours will be needed for this restoration at a cost of $81.41 per hour," for a total of $37,684.68.  *Id.*  Furthermore, the EOUSA advised the Plaintiff that "[b]ased on our experience," hosting and processing the restored data to allow search terms to be applied would require 1,500

4

hours at a cost of $80.00 per hour, for a total of $120,000.  *Id.*  The letter also advised that the Plaintiff would also incur a $0.10 per page duplication fee for every page after the first 100 pages released to the Plaintiff.  *Id.*  The letter requested an advance payment of $157,684.68, and stated that "[p]er 28 C.F.R. § 16.11(f), your request is not considered received until we receive a response from you.  Please respond within 30 days of the date of this letter, or this matter will be closed."  *Id.* at 1-2.  The letter provided that if the Plaintiff wished to reduce the fees, he could "reformulate [his] request by limiting the documents to a specific category or categories," or "specify that [he would] only pay up to a certain amount."  *Id.* at 1.  The Plaintiff also had the option to appeal the EOUSA's response to the OIP within sixty days of the date of the letter.  *Id.* at 2.  The Plaintiff alleges he did not receive the letter until August 2012.  Pl.'s Resp. to Defs.' Stmt., ECF No. [35-2], ¶ 32.  There is no record indicating Mr. Rosenberg ever filed an appeal of the EOUSA's June 8, 2012, letter.  Defs.' Stmt. ¶ 38.  The EOUSA notified the Plaintiff on July 11, 2012, that it had closed request number 2011-3284 after the Plaintiff failed to pay the search fees within thirty days of the agency's June 8, 2012, letter.  Brandon Decl., Ex. E (7/11/12 Ltr. to Pl.).

### B.  *FOIA Request to the Marshals Service*

William Bordley, Associate General Counsel for the Marshals Service, received a letter from the Plaintiff on September 28, 2011, seeking, among other things: (1) "any and all information relating to the raid of Agriprocessors, Inc., a meatpacking plant in Postville, Iowa, on May 12, 2008 ("the raid") and the subsequent prosecution of Sholom Rubashkin"; (2) "any and all information relating to actions proposed to take place in year 2000 against Agriprocessors, Inc., as documented in the Des Moines Register's August 6, 2011 article, 'Immigrant Raid Halted in 2000 on Election Fear, Ex-Agent Says'"; (3) "any and all information

relating to any actions considered to take place against Iowa Turkey Products, Inc. of Postville, IA"; (4) "any and all information relating to the class action case *Salazar v. Agriprocessors,* 527 F. Supp. 2d 873 (N.D. Iowa 2007); and (5) any and all documents reflecting communications between "any government agency or official" and over 101 individuals regarding Mr. Rubashkin or Agriprocessors.  Bordley Decl., Ex. A (Pl.'s FOIA Request to Marshals Serv.) at 2-7. The request included written authorization from Mr. Rubashkin to release records to the Plaintiff. Defs.' Stmt. ¶ 41.

The Marshals Service acknowledged receipt of the Plaintiff's request in a letter dated October 11, 2011.  Defs.' Stmt. ¶ 42.  The letter advised the Plaintiff that the Marshals Service had assigned request number 2011USMS18477 to the Plaintiff's submission, and had "commenced a search for documents responsive to your request and will contact you when our processing is complete."  Bordley Decl., Ex. B. (10/11/11 Ltr. to Pl.).  The Marshals Service also informed the Plaintiff that "[a]s it appears that some of the documents you request may be maintained by the [EOUSA], we have forwarded a copy of your request to that office for their direct response to you."  *Id.*  Under separate cover that same day, the Marshals Service forwarded the Plaintiff's request to the EOUSA.  Bordley Decl., Ex. C (10/11/11 Ltr. to S. Gerson, Acting Assistant Director, FOIA/Privacy Unit, EOUSA).

The Marshals Service district office for the Northern District of Iowa conducted the search for documents responsive to the Plaintiff's request.  Defs.' Stmt. ¶ 44.  Mr Bordley indicates that the Northern District of Iowa "was the district where the [Marshals Service] would reasonably be expected to find responsive records as the [sic] Sholom Mordechai Rubashkin's criminal case arose in the Northern District of Iowa."  Bordley Decl. ¶ 5.  The FOIA liaison for the Northern District of Iowa office was asked to search for "records pertaining to Sholom

Mordechai Rubashkin and [quoting the request] 'a raid' on Agriprocessors, Inc., in Postville, Iowa, on May 12, 2008, and actions against Iowa Turkey Products, Inc., Postville, Iowa." *Id.*

On November 2, 2011, the Marshals Service notified the Plaintiff that it had located 166 pages responsive to the Plaintiff's request.  Bordley Decl., Ex. D (11/2/11 Ltr. to Pl.) at 1.  The agency determined 98 pages originated with or contained information which originated from the EOUSA or Immigration and Customs Enforcement, and referred those pages to the originating agencies for disclosure determination and a direct response to the Plaintiff.[4]  *Id.* at 1.  The November 2 letter enclosed 68 pages that were released in full or in part.  *Id.* at 1; *see id.* (identifying exemption pursuant to which information was withheld from the 68 pages).  The letter informed the Plaintiff that "[i]f you are dissatisfied with [the agency's] action on this request, you may appeal by writing to the Director, Office of Information Policy."  *Id.* at 2.  The appeal "must be received by OIP within 60 days of the date of this letter."  *Id.*  The Plaintiff did not appeal the Marshals Service's November 2 determination.  Defs.' Stmt. ¶ 52.

## II.  LEGAL STANDARD

The Defendants move to dismiss the Plaintiff's Complaint as to the EOUSA and the Marshals Service for failure to state a claim, or in the alternative, for summary judgment. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) [] matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Here, both parties rely on evidence outside the pleadings to support their respective positions regarding the Defendants' motion.

---

[4]  The EOUSA responded directly to the Plaintiff on November 25, 2011, and released 41 pages in full, 18 pages in part.  Defs.' Stmt. ¶ 49 n.2.  The EOUSA withheld 2 pages in full, and indicated five pages were duplicates.  *Id.*  The Plaintiff did not appeal the EOUSA's response. *Id.*  The Court shall address the pages referred to Immigration and Customs Enforcement under separate cover.

Therefore the Court will treat Defendants' motion as a motion for summary judgment.  *Colbert v. Potter*, 471 F.3d 158, 167–68 (D.C. Cir. 2006).   The Plaintiff cross-moves for summary judgment on the issue of administrative exhaustion of his claims against the EOUSA and the Marshals Service.

A.      *Summary Judgment Standard*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials); or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).   "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."   Fed. R. Civ. P. 56(e).   When considering a motion for summary judgment, the court may not make credibility determinations or weigh the evidence; the evidence must be analyzed in the light most favorable to the nonmoving party, with all justifiable inferences drawn in his favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).   "If material facts are at issue, or, though undisputed, are susceptible to divergent inferences, summary judgment is not available."  *Moore v. Hartman*, 571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted).

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The mere existence of a factual dispute, by itself, is insufficient to bar summary judgment. *See Liberty Lobby*, 477 U.S. at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. For a dispute about a material fact to be "genuine," there must be sufficient admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Id.* The Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52. "If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." *Id*. at 249–50 (internal citations omitted). The adverse party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory assertions offered without any factual basis in the record cannot create a genuine dispute. *See Ass'n of Flight Attendants–CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465–66 (D.C. Cir. 2009).

### B.   Exhaustion of Administrative Remedies & the Freedom of Information Act

Under the Freedom of Information Act, "[e]xhaustion of administrative remedies is generally required before seeking judicial review 'so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.'" *Wilbur v. Central Intelligence Agency*, 355 F.3d 675, 677 (D.C. Cir. 2004) (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). In this context, the doctrine is "jurisprudential" and "not jurisdictional." *Hidalgo v. Fed. Bureau of Investigation*, 344 F.3d 1256, 1258 (D.C. Cir. 2003). Generally speaking, a plaintiff's "failure to exhaust precludes

9

judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." *Id.* at 1258–59 (quoting *Oglesby*, 920 F.2d at 61). The exhaustion requirement ensures that "the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision. *Oglesby*, 920 F.2d at 61.

### III. DISCUSSION

The EOUSA and Marshals Service argue they are entitled to summary judgment because the Plaintiff failed to pay the search fees requested for request number 2011-3284, and failed to exhaust his administrative remedies for requests numbered 2011-3285 and 2011USMS18477. The Plaintiff cross-moves for summary judgment on grounds the EOUSA is precluded from imposing fees in this case, that exhausting his remedies for request number 2011-3285 would have been futile, and that the Plaintiff constructively exhausted his administrative remedies with respect to 2011 USMS18477. The Court addresses each of the requests in turn.

A.     *Request No. 2011-3284*

The EOUSA moves for summary judgment with respect to the Plaintiff's claims regarding request number 2011-3284 on the grounds the Plaintiff has failed to pay the search fees requested by the agency. The Plaintiff contends the EOUSA is precluded from imposing fees because: (1) the EOUSA did not comply with the timing requirements of the FOIA; (2) the EOUSA did not raise the fee issue during administrative proceedings; and (3) the request for fees is nothing more than an improper litigation tactic. The Plaintiff further argues that the amount of fees requested by the EOUSA is unreasonable. None of the Plaintiff's arguments are persuasive.

1.     The EOUSA May Impose Search Fees Despite Failing to Comply with the FOIA's Timing Requirements

As a threshold matter, the Plaintiff argues the EOUSA is time-barred from requesting search fees. Section 552(a)(4)(A)(viii) provides

An agency shall not assess search fees (or in the case of a requester described under clause (ii)(II), duplication fees) under this subparagraph if the agency fails to comply with any time limit under paragraph (6), if no unusual or exceptional circumstances (as those terms are defined for purposes of paragraphs (6)(B) and (C), respectively) apply to the processing of the request.

5 U.S.C. § 552(a)(4)(A)(viii).  Subsection 552(a)(6)(B)(iii) defines "exceptional circumstances" to include "the need to search for and collect the requested records from field facilities or other establishments that are separate from the office processing the request," and "the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request."  *Id.* § 552(a)(6)(B)(iii)(I)-(II).

The Plaintiff argues that the EOUSA "has [] clearly failed to meet the time requirements" of paragraph (6).  However, section 552(a)(4)(A)(viii) permits the agency to impose search fees even if it did not comply with the time requirements of paragraph (6) if "unusual or exceptional circumstances," as defined "for purposes of paragraphs (6)(B) and (C)" apply to the Plaintiff's request.  5 U.S.C. § 552(a)(4)(A)(viii).  As defined by paragraph (6)(B), unusual circumstances exist in this case because EOUSA needed to search for and collect records from the United States Attorney's Office for the Northern District of Iowa.  *Id*. § 552(a)(6)(B)(iii)(I).  Because unusual circumstances apply to the Plaintiff's request, the EOUSA is entitled to impose search fees on the Plaintiff despite failing to comply with the timing requirements of paragraph (6).[5]

In addition to defining "unusual circumstances," paragraph (6)(B) sets forth steps the agency must take to notify the requestor that the agency needs additional time to process the request.  5 U.S.C. § 552(a)(6)(B)(i)-(ii).  The Plaintiff argues that because the EOUSA did not

---

[5] The Plaintiff's reliance on *Bensman v. National Park Service*, 806 F. Supp. 2d 31 (D.D.C. 2011), is misplaced because, among other things, the agency did not identify exceptional circumstances as defined by paragraph (6)(B) and (C) to excuse its failure to timely decide a request for a fee waiver, and the agency's regulations precluded the agency from taking additional time to decide whether to grant a fee waiver.  *Id*. at 43.

comply with the procedural requirements for seeking additional time under paragraph (6)(B), the exception in paragraph (4)(A)(viii) for "unusual circumstances" does not apply in this case. The plain text of section 552(a)(4)(A)(viii) requires only that unusual circumstances *as defined by* paragraph (6)(B) or (C), not that unusual circumstances exist *and* that the agency properly seek additional time to respond to the request in light of unusual circumstances. The Plaintiff laments that "[i]f the agency is permitted to assess search fees after an eight-month practice of non-communication, including seven months during which it knew of the relevant information that its field office may have had, it is difficult to imagine when Section 552(a)(4)(A)(viii) would have any effect." Pl.'s Reply at 7. To be accurate, the record indicates the EOUSA did not receive the estimate for restoring and hosting backup tapes until May 2012, one month before the fee request was transmitted to the Plaintiff. Vanek Decl., Ex. E. In any event, this section applies in every case in which unusual circumstances do not exist. Because unusual circumstances exist with respect to request number 2011-3284, section 552(a)(4)(A)(viii) does not preclude the EOUSA from imposing search fees despite the agency's failure to comply with the FOIA's timing requirements.[6]

      2.      <u>EOUSA May Raise the Fee Issue for the First Time After the Plaintiff Filed Suit</u>

The Plaintiff further argues that the EOUSA is precluded from raising any argument

---

[6] The EOUSA suggests in its motion that 20-day time limit in which the agency was required to respond to request number 2011-3284 was tolled pursuant to section 552(a)(6)(A)(ii)(II), which provides that "[t]he 20-day period shall not be tolled by the agency except if necessary to clarify with the requester issues regarding fee assessment. . . . [T]he agency's receipt of the requester's response to the agency's request for information or clarification ends the tolling period." 5 U.S.C. § 552(a)(6)(A)(ii)(II). The EOUSA offers not authority for the proposition that the tolling period includes the time during which the agency is gathering information *before* requesting clarification from the requestor. Defs.' Mot. at 10-11. However, the Court does not reach this issue because the EOUSA is entitled to impose search fees even if the 20-day period expired before the agency submitted its request for fees to the Plaintiff.

regarding fees because "the fees were neither requested before litigation, nor argued at the administrative level."  Pl.'s Cross-Mot. at 13.  The fact that a fee request was made after the Plaintiff commenced litigation does not excuse the Plaintiff from paying the requested fees. *Pollack v. Dep't of Justice*, 49 F.3d 115, 120 (4th Cir. 1995), *cert denied*, 516 U.S. 843 (1995) (rejecting the Plaintiff's argument that "once he commenced an action in court to enforce his FOIA request, he was relieved of any obligation to pay for documents"); *see, e.g.*, *Kurdyukov v. Drug Enforcement Admin.*, 578 F. Supp. 2d 61, 65-66 (D.D.C. 2008); *Farrugia v. Exec. Office for U.S. Attys.*, 366 F. Supp. 2d 56, 57 (D.D.C. 2005).  The Plaintiff attempts to distinguish *Pollack* and similar cases on the grounds "none of those cases accounted for the 2007 amendments that expressly provided for fees to be precluded when an agency has missed time limits."  Pl.'s Cross-Mot. at 14.  As indicated above, the 2007 amendments only preclude an agency from imposing fees if the agency fails to comply with certain time limits *and* no unusual or exceptional circumstances exist.  The pre-2007 case law stands for the proposition that when an agency is permitted to request fees, a plaintiff must pay the fees even if the request is made after litigation commences.  The 2007 amendments limited the situations in which an agency can impose fees, but has no effect on the principle set forth in *Pollack* that when a fee request is valid, a plaintiff must comply, even if the agency did not submit the fee request until after the plaintiff filed suit.

The Plaintiff contends the Court should disregard the fee issue because the EOUSA "completely failed to articulate this position prior to commencement of litigation."  Pl.'s Cross-Mot. at 13.  The Plaintiff is correct that *Bensman v. National Park Service*, 806 F. Supp. 2d 31 (D.D.C. 2011), Judge James E. Boasberg declined to consider certain arguments raised by the agency because it "failed to make [the argument] at the administrative level before Plaintiff

brought suit." *Bensman*, 806 F. Supp. 2d at 43.  The *Bensman* case is inapposite for the simple reason that Bensman actually exhausted his administrative remedies against the defendant agency.  *See id.* at 35-36.  Mr. Rosenberg instituted this action rather than pursue any appeal of the EOUSA's action (or inaction), alleging he constructively exhausted his administrative remedies.  As the Plaintiff noted, "the theory of exhaustion cuts both ways," Pl.'s Cross-Mot. at 13; the EOUSA cannot be faulted for failing to raise arguments during administrative proceedings when the Plaintiff elected to bypass administrative proceedings altogether.  The EOUSA is not barred from raising the fee issue for the first time in this Court.  *Chaplin v. Stewart*, 796 F. Supp. 2d 209, 211-12 (D.D.C. 2011); *see Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 24 (D.D.C. 2009) ("There is no requirement that an agency administratively invoke an exemption in order to later rely on it in federal court.").

### 3.   The EOUSA's Fee Request Is Not an Improper Litigation Tactic

The Plaintiff's suggestion that the EOUSA's request for fees is an "improper litigation tactic" is meritless.  Pl.'s Cross-Mot. at 13.  First, the undisputed record evidence indicates the EOUSA began formulating an estimate of the search cost shortly after the Plaintiff submitted his request and months before the Plaintiff filed suit.  Vanek Decl., Ex. C (10/27/11 Email D. Nash to S. Vanek) (providing estimate of search and sort time for request 2011-3284); Vanek Decl., Ex. D (1/12/12 Email D. Heintzelman to S. Vanek) (indicating Ms. Heintzelman was waiting on additional information to finalize a search cost estimate).  Second, the costs the EOUSA would incur are substantial.  It is not as if the EOUSA is refusing to process the Plaintiff's request pending payment of a trivial amount of funds.[7]  Third, the EOUSA has not demanded the

---

[7]  To be fair, agencies have the right to demand prepayment of search fees in excess of $250 dollars, even if some requesting parties would consider such amounts trivial.  5 U.S.C.

prepayment of *all* search fees.  Specifically, the EOUSA has not sought prepayment of fees associated with searching physical documents because the agency "does not know the extent to which there may be overlap between the electronic records and physical records and did not want to artificially inflate the estimated fee."  Defs.' Stmt. ¶ 34.  The fact that the agency requested prepayment of only a part of the search fees that may be incurred so as to avoid artificially increasing the estimate tends to show that the request is made in good faith, and not as a litigation tactic.  Fourth, the fact that the request for prepayment was submitted by the agency *after* the Plaintiff filed suit does not necessarily suggest the request is an "improper litigation tactic."  Because the Plaintiff purported to constructively rather than actually exhaust his administrative remedies, by definition *every* position the EOUSA takes in this case was raised for the first time after litigation commenced; there were no administrative proceedings during which the EOUSA could have raised its defenses.  On this record, the EOUSA's fee request is a reasonable invocation of its right under FOIA to obtain advance payment of search fees and not merely a "convenient litigating position."  *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212 (1988).

4. <u>The Plaintiff Failed to Show the Requested Fees are Unreasonable</u>

Finally, the Plaintiff objects to the requested fees on the grounds the requested amount is unreasonable.  The EOUSA's request for pre-payment of fees is comprised of two separate charges: (1) $37,648.68 for the restoration of back-up tapes (462.9 hours at $81.41/hour); and (2) $120,000, for hosting and processing the data once restored (1,500 hours at $80/hour).  Vanek Decl., Ex. G.  The Plaintiff does not dispute that the hourly rates identified by the EOUSA are consistent with Department of Justice regulations.  *See* 28 C.F.R. § 16.11(c)(1)(iii).  Rather, the

---

§ 552(a)(4)(A)(v).

Plaintiff argues the requested fees are unreasonable for three reasons.

First, the Plaintiff emphasizes that the EOUSA's declarant, Sean Vanek, indicated he is "ignoran[t] of any sort of technology." Vanek Decl., Ex. F (8/28/12 Email S. Vanek to D. Heintzelman). This argument is a canard. The EOUSA did not rely on Mr. Vanek to formulate the estimate. Rather the EOUSA relied on—and Mr. Vanek's Declaration attributes the estimate to—the EOUSA's information technology staff. Vanek Decl. ¶¶ 22-30. The Plaintiff offers no reason to doubt the knowledge or reliability of the EOUSA information technology staff responsible for drafting the estimate embodied in the June 8, 2012, fee request letter.

Second, Mr. Rosenberg asserts in his own declaration that based on his "extensive experience with electronic discovery," it would be "quite rare to see any case where the labor hours required reached 18,000 hours." Pl.'s Ex. I (Rosenberg Decl.) ¶¶ 22, 24. Mr. Rosenberg appears to refer to the estimate provided in an October 27, 2011, email in which the USAO/NDIA estimated it will take "a composite total of 3846 hours of attorney search and sort time and 14,892 hours and 45 minutes of support staff search time for FOIA request #2011-3284." The reasonableness of the October 2011 estimate is irrelevant; the EOUSA has only requested fees based on the May 2012 estimate of 462.9 hours to restore back-up tapes and 1,500 hours for hosting and processing. Vanek Decl., Exs. E, G. The Plaintiff does not dispute that the labor estimate outlined in the June 8, 2012, letter (1,962.9 hours total) is unreasonable.

Third, Mr. Rosenberg generally asserts that "for document restoration costs for one side to amount to $157,000 or more, even where discovery requires the restoration of dozens or more back-up tapes" would be "quite rare." Rosenberg Decl. ¶ 25. Apart from this assertion, the Plaintiff offers no specific analysis or evidence to demonstrate the requested fees are unreasonable. The fees are based on estimates of the hours that would be required for each step

in the process of restoring the back-up tapes that may contain potentially responsive documents. The fees are in accordance with Department of Justice regulations, and the EOUSA provided the Plaintiff the opportunity to reformulate his request or specify that he would only pay up to a certain amount.  Vanek Decl., Ex. G.  The Plaintiff's "bare allegations" that the EOUSA's fee estimate is unreasonable is insufficient to create a genuine issue of material fact sufficient to avoid summary judgment on this issue.  *Nat'l Treasury Employees Union v. Griffin*, 811 F.2d 644, 650 (D.C. Cir. 1987).

The EOUSA is entitled to request search fees from the Plaintiff before processing his request, and the amount of fees requested is reasonable.  Because the Plaintiff has not satisfied his statutory obligation to pay the fees requested in advance of processing the Plaintiff's request, the EOUSA is entitled to summary judgment as to request number 2011-3284.  *Pollack*, 49 F.3d at 120.

B.      *Request No. 2011-3285*

The EOUSA moves for summary judgment regarding request number 2011-3285 on the grounds the Plaintiff failed to exhaust his administrative remedies.  The Plaintiff admits that he failed to appeal the EOUSA's denial of this request, and instead argues that the failure should be excused insofar as any administrative appeal would have been futile.  In support of the proposition, the Plaintiff relies entirely on *Massey v. District of Columbia*, 400 F. Supp. 2d 66 (D.D.C. 2005).  The *Massey* court explained that "when it is demonstrated that continuing through the administrative process would be futile or inadequate," parents are not required exhaust their administrative remedies before challenging a school district's action under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.*  400 F. Supp. 2d at 70-71. The Plaintiff cites no authority demonstrating the futility exception applies to the administrative

17

exhaustion requirement under the FOIA.  Courts "will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."  *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  "[B]inding Circuit precedent could not be clearer: exhaustion of administrative remedies 'is a mandatory prerequisite to a lawsuit under FOIA.'"  *Freedom Watch, Inc. v. Central Intelligence Agency*, 895 F. Supp. 2d 221, 227 n.2 (D.D.C. 2012) (quoting *Wilbur*, 355 F.3d at 676).

Assuming the exception applies to FOIA requests generally, the Plaintiff argues an appeal of the agency's denial of request number 2011-3285 would be futile because the EOUSA "failed to inform Plaintiff which paragraph or paragraphs had been placed into Request 2011-3285," and without that information "Plaintiff simply could not craft an appeal as he could not even evaluate if the agency had correctly selected a paragraph concerning a third party."  Pl.'s Cross-Mot. at 18.  To the contrary, the EOUSA notified the Plaintiff on October 3, 2011, that the portion of his request concerning "Third Parties" was assigned request number 2011-3285.  Brandon Decl., Ex. C at 2.  The Plaintiff's request itself is divided into five (unnumbered) categories.  The first (¶¶ 1-15), second (¶¶ 16-25), and fourth (¶¶ 33-34), request documents relating to Agriprocessors and Sholom Rubashkin.  Vanek Decl., Ex. A at 2-6.  The third (¶¶ 26-32) and fifth (¶¶ 35-40) requests seek information regarding Iowa Turkey Products and a list of 101 individuals.  *Id.* at 5-7.  In this context, the Plaintiff's assertion that he could not craft an effective appeal is disingenuous.

In his Reply, the Plaintiff appears to retreat from the argument that he could not determine which portions of his request were included in what the EOUSA considered request number 2011-3285.  Instead, the Plaintiff suggests that "many of [the third parties] were public officials and figures acting in their official capacities, while others were interacting with public

officials regarding government business.  Thus responsive documents would likely not properly be the subject of any Privacy Act withholding."  Pl.'s Reply at 14.  Exhaustion may only be excused "where it would be 'futile because of *certainty of an adverse decision*.'"  *Armstrong v. Bush*, 807 F. Supp. 816 (D.D.C. 1992) (quoting *James v. U.S. Dep't of Health & Human Servs.*, 824 F.2d 1132, 1138 (D.C. Cir. 1987)).  The Plaintiff does not suggest that the EOUSA was certain to reject his argument that the public officials amongst the third parties listed in the Plaintiff's request were not subject to any Privacy Act withholding.  Nor does the Plaintiff suggest he could not identify which of the individuals he included in his own FOIA request were "public officials" not subject to Privacy Act withholdings.  The fact that the Plaintiff would have liked an explicit list of the paragraphs the EOUSA included within the scope of request number 2011-3285 before drafting his appeal does not excuse his failure to exhaust his administrative remedies.  Nothing in the present record suggests the EOUSA was certain to reject an appeal by the Plaintiff concerning the agency's response to request number 2011-3285.  Accordingly, the Plaintiff cannot invoke the futility exception to excuse his failure to exhaust his administrative remedies regarding request number 2011-3285.

### C.    *Request No. 2011USMS18477*

The Marshals Service contends it is entitled to summary judgment because the Plaintiff failed to exhaust his administrative remedies following the Marshals Service's final response to request number 2011USMS18477.  The Plaintiff argues he constructively exhausted his administrative remedies, and seeks additional time to respond to the Marshals Service's substantive arguments.  For the reasons set forth below, the Marshals Service issued a final agency action before the Plaintiff filed suit, thus the Plaintiff was required to actually exhaust his

administrative remedies.[8]

> The Freedom of Information Act requires an agency, with certain exceptions, to
>
> determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination[.]

5 U.S.C. § 552(a)(6)(A)(i).   The requesting party "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions" of paragraph (6).   *Id.* § 552(a)(6)(C)(i).   However, if an agency subsequently responds to the request before the requesting party files suit, the requestor must exhaust his administrative remedies before seeking judicial review.   *Oglesby*, 920 F.2d at 64-65.

On November 2, 2011, the Marshals Service notified the Plaintiff that it had located 166 pages responsive to his request, 98 of which were referred to originating agencies for a "disclosure determination and direct response to you in accordance with 28 C.F.R. § 16.4 and/or § 16.42."   Bordley Decl., Ex. D at 1.   The Marshals Service released the remaining 68 pages with certain redactions pursuant to the FOIA and the Privacy Act, 5 U.S.C. § 552a.   *Id.*   The letter informed the Plaintiff that if he was dissatisfied with Mr. Bordley's action on his request, he could appeal to the Office of Information Policy within sixty days.   *Id.* at 2.   The Plaintiff argues that the November 2 letter did not trigger the administrative exhaustion requirement because the letter "was not a final agency action and the search was not complete."   Pl.'s Cross-Mot. at 4.

The Plaintiff asserts that the Marshals Service's November 2 letter was not a final agency action because the letter indicated the agency "is responding to your request" and did not

---

[8]   Because the Plaintiff failed to exhaust his administrative remedies, the Court does not reach the Marshals Service's arguments regarding the adequacy of the search performed and the appropriateness of various withholdings.   Defs.' Mot. at 12-18.

explicitly state that the search for potentially responsive records was complete.  To call to this argument spurious would be generous.  The letter opens by stating that "[t]he United States Marshals Service is responding to your request for specific records in this agency's files pertaining to your client, Sholom Mordechai Rubashkin."  Bordley Decl., Ex. D at 1.  This sentence clearly indicates the purpose of the letter, and cannot reasonably be read to indicate the Marshals Service's response is ongoing.  The second paragraph of the letter explains that the Marshals Service "conducted a search of our files . . . and located 166 pages responsive to your request."  *Id.* at 1.  The letter goes on to explain the disposition of all 166 pages, and indicates the Plaintiff can appeal the decision.  *Id.* at 2.  An affirmative statement that the agency's search was complete would be redundant in light of the unambiguous statement by the agency that it conducted a search for potentially responsive documents, referred certain pages to the appropriate originating agency, produced the remaining pages subject to redactions pursuant to specific exemptions articulated in the letter, and notified the Plaintiff could appeal if he was unsatisfied.  *Id.* at 1-2.  The Marshals Service's November 2, 2011, more than satisfied the requirement for an agency response sufficient to trigger the exhaustion requirement.  *Oglesby*, 920 F.2d at 65 ("A response is sufficient for purposes of requiring an administrative appeal if it includes: the agency's determination of whether or not to comply with the request; the reasons for its decision; and notice of the right of the requester to appeal to the head of the agency if the initial agency decision is adverse.").

The Plaintiff indicates that he thought "work was ongoing at the agency level," and "[n]ot wanting to interrupt the search with a court action, he waited for the rest of the documents for over four months."  Pl.'s Cross-Mot. at 5 (citing *Earle v. Holder*, 815 F. Supp. 2d 176 (D.D.C. 2011)).  Not only was Plaintiff's belief the "work was ongoing" not supported by the November

2 letter from the Marshals Service, there is nothing in the record to indicate the Plaintiff had any communication with the Marshals Service that might reasonably lead the Plaintiff to believe that the agency was still processing his request.  The Plaintiff asserts in his motion that he "asked for updates and patiently waited for more responses," but provides no document evidencing any communication with the Marshals Service after November 2, 2011.[9]  There is no evidence to suggest the Marshals Service ever indicated to the Plaintiff that a search for potentially responsive documents was ongoing; to the contrary, the Plaintiff alleges the Marshals Service "has not communicated with the Plaintiff except through filings to this Court."  Pl.'s Reply at 15.  Thus, there is nothing in the record to indicate that the parties were "seeking a final agency decision that, if successful, would have negated [the] need to file a lawsuit," such that the Court should excuse the Plaintiff's failure to exhaust his administrative remedies in this case.  *Earle*, 815 F. Supp. 2d at 181.

Finally, the Plaintiff points to the Marshals Service's June 2012 production of additional documents to demonstrate the agency's search for potentially responsive documents was not complete as of November 2, 2011.  Mr. Bordley explained in his Declaration that "[w]hile reviewing the records in preparation of this declaration, it was determined that there were four hundred (400) additional pages which had not been considered in making the initial release."  Bordley Decl. ¶ 9.  The Marshals Service subsequently released 270 pages in whole or in part, and referred 130 pages to Immigration and Customs Enforcement for a direct response to the Plaintiff.  *Id.*  Nothing in Mr. Bordley's declaration suggests a search for potentially responsive

---

[9]  The Declaration of Johanes Maliza documents the exchanges Mr. Maliza had with the EOUSA on Mr. Rosenberg's behalf, but does not allege that he ever called or had any contact with the Marshals Service after November 2, 2011.  *See* Pl.'s Ex. H (Maliza Decl.), Section III.  Nor does Mr. Rosenberg allege that he had any contact with the Marshals Service after receiving the November 2 letter.  *See* Rosenberg Decl., Section IV.

documents was "ongoing" after November 2.   To the contrary, Mr. Bordley's unrefuted declaration indicates that the agency re-reviewed records during the course of this litigation.  *See also* Pl.'s Reply at 15 ("Defendant USMS produced 400 more pages in June 2012, [sic] because it had been sued and was going to have to explain its actions to this Court.").   Though the June 2012 production is arguably relevant to the adequacy of the agency's initial search, it does not call into question the finality of the agency's November 2 letter.   The Marshals Service's November 2, 2011, letter to the Plaintiff was an unambiguous final agency action on request number 2011USMS18477.   Although the record is unclear as to when the Marshals Service received the Plaintiff's request, even if the agency's November 2, 2011, response was untimely, the agency responded before the Plaintiff filed suit, thus triggering the exhaustion requirement. *Oglesby*, 920 F.2d at 64-65.   The Plaintiff's failure to seek administrative review of the final agency action in a timely manner precludes review by this Court.

## IV.  CONCLUSION

For the foregoing reasons, the Plaintiff has failed to satisfy the pre-requisites for judicial review of his claims against the Executive Office for United States Attorneys and the United States Marshals Service.   The Executive Office may impose search fees for request number 2011-3284 and the fees sought are reasonable.   Because the Plaintiff failed to pay the fees imposed, the Court cannot entertain a challenge to the Executive Office's response (or lack thereof) to request 2011-3284.   Even if the futility exception generally applies to the requirement that a FOIA plaintiff exhaust his administrative remedies, the Plaintiff failed to demonstrate that exhaustion of his administrative remedies for request number 2011-3285 have been futile. Finally, the Marshals Service took final agency action with respect to request number 2011USMS18477 before the Plaintiff filed suit, thus triggering the Plaintiff's obligation to

exhaust his administrative remedies.   The Plaintiff's admitted failure to pursue administrative

appeals concerning requests numbered 2011-3285 and 2011USMS18477 likewise precludes

review in this Court.   Accordingly, the EOUSA and Marshals Service's [27] Motion to Dismiss,

or Alternatively, Motion for Summary Judgment is GRANTED and the Plaintiff's [36] Cross-

Motion for Summary Judgment is DENIED.    An appropriate Order accompanies this

Memorandum Opinion.

                                                    _____*/s/*_____
                                                    **COLLEEN KOLLAR-KOTELLY**
                                                    UNITED STATES DISTRICT JUDGE