## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

LAWRENCE ROSENBERG,

    Plaintiff,

      v.

UNITED STATES DEPARTMENT OF
IMMIGRATION AND CUSTOMS
ENFORCEMENT, *et al.*,

    Defendants.

**Civil Action No. 12-452 (CKK)**

## MEMORANDUM OPINION
(February 3, 2014)

Plaintiff Lawrence Rosenberg submitted Freedom of Information Act requests to various federal agencies seeking, among other things, records related to the raid of Agriprocessors, Inc., meatpacking plant and the subsequent prosecution of Sholom Rubashkin whom Plaintiff represents. Dissatisfied with the agencies' responses to his request, Plaintiff filed suit against United States Immigration and Customs Enforcement, the United States Marshals Service, the Executive Office for United States Attorneys, and the Federal Bureau of Investigation. On July 22 and 23, 2013, the Court granted the Motions to Dismiss or, in the alternative, for Summary Judgment filed by United States Immigration and Customs Enforcement, the Executive Office for United States Attorneys, and the United States Marshals Service. *See* Order (July 22, 2013), ECF No. [64]; Order (July 23, 2013), ECF No. [66]. On August 11, 2013, the Court granted in part the FBI's Motion for Summary Judgment and denied in part the Plaintiff's Cross-Motion for Summary Judgment, but held in abeyance the parties' motions as to the adequacy of the agency's search and the agency's application of Exemption 7(D), as well as the agency's application of

Exemptions 6, 7(C), and 7(E) on a specific set of pages identified by the Court. *See* Order (Aug. 11, 2013), ECF. No [69]. The Court requested supplemental briefing on the application of the exemptions held in abeyance. *Id.*

Presently before the Court is the FBI's [71] Renewed Motion for Summary Judgment. Upon consideration of the pleadings,[1] the documents submitted to the Court for *in camera* review, the relevant legal authorities, and the record as a whole, the Court finds the FBI has demonstrated that it conducted an adequate search for potentially responsive documents and has justified its redaction of information pursuant to Exemptions 6 and 7(C) on all but one of the pages identified in the Court's August 2013 Order. The Court further finds that the FBI has justified its redaction of information on all except fifteen of the pages on which it invoked Exemption 7(D) in addition to Exemptions 6 and 7(C). Finally, the Court finds the FBI has justified its redaction of information that it withheld pursuant to Exemption 7(E). Accordingly, the FBI's [71] Renewed Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Furthermore, the FBI's [47] Motion for Summary Judgment and Plaintiff's [51] Cross-Motion for Summary Judgment, portions of which were previously held in abeyance, are GRANTED IN PART and DENIED IN PART.

## I. BACKGROUND

### A. *Factual Background*

Sholom Rubashkin managed a kosher meatpacking company in Postville, Iowa, named Agriprocessors, Inc., which at one point employed over one thousand individuals. *United States*

---

[1] Def.'s Notice of Filing (*Vaughn* Decl.), ECF No. [46]; Def.'s Mot. for Summ. J., ECF Nos. [47]; Pl.'s Opp'n & Cross-Mot. ("Pl.'s Cross-Mot."), ECF Nos. [50, 51]; Def.'s Reply & Opp'n to Pl.'s Cross-Mot. ("Def.'s Reply"), ECF Nos. [55, 56]; Pl.'s Reply, ECF No. [57]; Pl.'s Suppl., ECF No. [60]; Def.'s Resp. to Pl.'s Suppl., ECF No. [61]; Def.'s Renewed Mot. for Summ. J., ECF No. [71]; Pl.'s. Opp'n, ECF No. [74]; Def.'s Reply, ECF No. [78].

*v. Rubashkin*, 655 F.3d 849, 853 (8th Cir. 2011). In May 2008, Immigration and Customs Enforcement raided the plant, and arrested nearly four hundred employees for immigration violations, bringing criminal charges against most of the arrestees. *Id.* at 854. "Around that time," the United States Attorney's Office in the Northern District of Iowa informed Mr. Rubashkin that he was the target of a federal investigation for financial and immigration crimes. *Id.* Mr. Rubashkin was arrested in November 2008 and charged by indictment with 163 counts, including fourteen counts each of bank and wire fraud, and sixty nine counts of harboring undocumented aliens for profit. Mr. Rubashkin was eventually convicted of seventy one counts of bank, mail, and wire fraud, money laundering, and false statements to bank, in addition to fifteen counts of willful violations of orders of the Secretary of Agriculture. *Id.* Relying on documents obtained through a Freedom of Information Act request submitted prior to his trial, Mr. Rubashkin subsequently moved for a new trial, or for discovery, which the trial court denied. *Id.* at 856. The Eighth Circuit affirmed the denial of Mr. Rubashkin's motion for a new trial, as well as his underlying conviction and sentence on September 16, 2011. *Id.* at 869.

By letter dated September 28, 2011, Plaintiff, an attorney who represents Mr. Rubashkin and his wife and their children, submitted a Freedom of Information Act ("FOIA") request to the FBI seeking, among other things: (1) "any and all information relating to the raid of Agriprocessors, Inc., a meatpacking plant in Postville, Iowa, on May 12, 2008 ("the raid") and the subsequent prosecution of Sholom Rubashkin"; (2) "any and all information relating to actions proposed to take place in year 2000 against Agriprocessors, Inc., as documented in the Des Moines Register's August 6, 2011 article, 'Immigrant Raid Halted in 2000 on Election Fear, Ex-Agent Says'"; (3) "any and all information relating to any actions considered to take place against Iowa Turkey Products, Inc. of Postville, IA"; (4) "any and all information relating to the

class action case *Salazar v. Agriprocessors,* 527 F. Supp. 2d 873 (N. D. Iowa 2007)"; and (5) any and all documents reflecting communications between "any government agency or official" and over 101 individuals regarding Mr. Rubashkin or Agriprocessors.   Hardy Decl., Ex. A (Pl.'s FOIA Request), ECF No. [46-1], at 2-8.   The Plaintiff's request included 39 numbered paragraphs outlining his specific requests. *See id.*

The FBI acknowledged the Plaintiff's request by letter dated October 5, 2011, assigning the request number 1174698.  Def.'s Stmt. ¶ 3.[2]   The FBI advised the Plaintiff that it would search the "indices to [the FBI's] Central Records System for the information responsive to this request." *Id.*; Hardy Decl., Ex. B (10/5/11 Acknowledgment Ltr.).   Two weeks later, the FBI notified the Plaintiff that it located 1,223 potentially responsive pages.   Hardy Decl., Ex. C (10/19/11 Ltr. FBI to Pl.).   The letter advised the Plaintiff that if all of the potentially responsive pages were to be released, the Plaintiff would owe the FBI $112.30 in duplication fees to receive a paper copy or $20.00 to receive the release on a CD. *Id.* The FBI did not receive a response to its October 19, 2011, letter from the Plaintiff, and did not produce any documents in response to the request.

The Plaintiff filed suit on March 23, 2012.  On September 7, 2012, the FBI processed the pages identified as potentially responsive to the Plaintiff's request.  Hardy Decl. ¶ 11.  Of the 1,233 pages initially identified, 257 were found to be duplicates.  Second Hardy Decl., ECF No. [55-1], ¶ 8; Hardy Decl. ¶ 4.  The FBI released 39 pages in full and 322 pages in part.  Hardy Decl. ¶ 4.  One hundred and fifty five pages were withheld in their entirety pursuant to various

---

[2]  The Court shall refer to the FBI's or the Plaintiff's Statement of Material Facts ("Def.'s Stmt." or "Pl.'s Stmt."), or directly to the record, unless a statement is contradicted by the opposing party, in which case the Court may cite to either party's Response to the Statement of Material Facts ("Resp. Stmt.").

FOIA exemptions.  *Id.*  The remaining 450 pages were withheld because they are court materials sealed by the United States District Court for the Northern District of Iowa.  *Id.*

**B. *Procedural Background***

The parties filed cross-motions for summary judgment in the first part of 2013.  The FBI argued that it had conducted an adequate search for documents potentially responsive to the Plaintiff's FOIA request and that it properly withheld certain information from Plaintiff pursuant to FOIA exemptions 3, 6, 7(C), 7(D), and 7(E). Although the Court granted summary judgment on several of the FBI's arguments, the Court found that the FBI had failed to demonstrate that it conducted an adequate search for potentially responsive documents, and also failed to justify why certain information was redacted pursuant to FOIA exemptions 6, 7(C), and 7(E).  *See* Mem. Op. (Aug. 11, 2013), ECF No. [70], at 9-12, 15-21, 23-26.  Consequently, the Court ordered the FBI to supplement its motion for summary judgment regarding the adequacy of its search and its application of FOIA exemptions 6, 7(C), and 7(E) to justify specific redactions in certain responsive documents.  *See* Order (Aug. 11, 2013), at 2.  In addition, because the Court found the Plaintiff did not fully articulate his challenge to the FBI's invocation of Exemption 7(D) until his reply brief, the Court provided the FBI an opportunity to supplement its showing as to the use of Exemption 7(D).  *See* Mem. Op. (Aug. 11, 2013), at 22-23; Order (Aug. 11, 2013), at 2.  The FBI filed its present Renewed Motion for Summary Judgment in response to the Court's August 11, 2013, Order requesting supplemental briefing.

## II.  LEGAL STANDARD

Congress enacted FOIA to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976) (citation omitted).  Congress remained sensitive to the need to achieve balance between these

objectives and the potential that "legitimate governmental and private interests could be harmed by release of certain types of information." *Critical Mass Energy Project v. Nuclear Regulatory Comm'n*, 975 F.2d 871, 872 (D.C. Cir. 1992) (en banc) (citation omitted), cert. denied, 507 U.S. 984 (1993). To that end, FOIA "requires federal agencies to make Government records available to the public, subject to nine exemptions for specific categories of material." *Milner v. Dep't of Navy*, 131 S.Ct. 1259, 1261–62 (2011). Ultimately, "disclosure, not secrecy, is the dominant objective of the Act." *Rose*, 425 U.S. at 361. For this reason, the "exemptions are explicitly made exclusive, and must be narrowly construed." *Milner*, 131 S.Ct. at 1262 (citations omitted).

When presented with a motion for summary judgment in this context, the district court must conduct a "de novo" review of the record, which requires the court to "ascertain whether the agency has sustained its burden of demonstrating that the documents requested . . . are exempt from disclosure under the FOIA." *Multi Ag. Media LLC v. Dep't of Agriculture*, 515 F.3d 1224, 1227 (D.C. Cir. 2008) (citation omitted). The burden is on the agency to justify its response to the plaintiff's request. 5 U.S.C. § 552(a)(4)(B). "An agency may sustain its burden by means of affidavits, but only if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Multi Ag Media*, 515 F.3d at 1227 (citation omitted). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Am. Civil Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011) (citations omitted). "Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the

exemption are likely to prevail." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 509 (D.C. Cir. 2011) (citation omitted). Summary judgment is proper when the pleadings, the discovery materials on file, and any affidavits or declarations "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). With these principles in mind, the Court turns to the merits of the FBI's renewed motion for summary judgment.

### III. DISCUSSION

The FBI seeks summary judgment on the grounds that it conducted an adequate search for responsive documents and properly withheld information pursuant to FOIA Exemption 7(D) and Exemptions 6, 7(C), and 7(E) on the pages identified by the Court in its August 2013 Order.[3] The Court begins it analysis with a discussion of the adequacy of the FBI's search for documents before turning to the specific exemptions invoked by the FBI.

#### A. *Adequacy of the FBI's Search*

"An agency fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents.'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 390 (D.C. Cir. 1999) (citation omitted). "At summary judgment, a court may rely on [a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Ancient Coin Collectors Guild*, 641 F.3d at 514 (citation and internal quotation marks omitted). "The agency cannot limit its search to only one

---

[3] Because the applicability of Exemption 7(C) in this context depends in part on the content of the documents, the Court previously ordered the FBI to provide it with unredacted copies of the responsive documents the FBI withheld or produced in redacted form to the Plaintiff.

or more places if there are additional sources that are likely to turn up the information requested." *Valencia-Lucena*, 180 F.3d at 391 (citation and internal quotation marks omitted). Ultimately, the adequacy of a search is "determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (citation omitted).

In its August 2013 Memorandum Opinion, the Court found the two declarations prepared by David Hardy averring to the adequacy of the FBI's search lacking in several respects. First, neither Hardy declaration demonstrated that the FBI's search was "tailored to the nature" of the Plaintiff's request. Mem. Op. (Aug. 11, 2013), at 11. Specifically, the Court noted that while declarations stated that the FBI searched its Central Records System ("CRS") for responsive documents, it did not aver that the CRS is the only collection of files likely to contain responsive documents. *Id.* Moreover, even when Plaintiff challenged the adequacy of the FBI's search for emails, the FBI did not assert in the Second Hardy declaration that the FBI searched all systems of records "likely to possess the requested information." *Id.* In addition, the Court found that neither Hardy declaration "even attempts to establish that the requested communications between the FBI and various third parties prior to or after the raid are likely to be found in the [CRS]." *Id.* at 12.

With its Renewed Motion for Summary Judgment, the FBI now submits a third Hardy Declaration that offers a more complete justification of the adequacy of the FBI's search. Accordingly, the Court finds that the FBI has now provided sufficient evidence that its search was adequate. As explained in the FBI's first two sworn declarations, the FBI conducted a search of the CRS utilizing the "phonetic sounds of the last, middle, and first names relating to Sholom Mordechai Rubashkin, Agriprocessors Inc., and Iowa Turkey Products Inc. Hardy Decl.

8

¶¶ 12, 18; Second Hardy Decl. ¶ 5. "The FBI also used the plaintiff's date of birth to facilitate the identification of responsive records." Hardy Decl. ¶ 18. The CRS "enables the FBI to maintain all information which it has acquired in the course of fulfilling its mandated law enforcement responsibilities" and includes "administrative, applicant, criminal, personnel, and other files compiled for law enforcement purposes." *Id.* ¶ 12. The files are indexed according to "main" entries, that is, "the name corresponding with a subject of a file," and "reference" entries, which reflect "a mere mention or reference to an individual, organization, or other subject matter, contained in a document located in another 'main' file on a different subject matter." *Id.* ¶ 13. After Plaintiff filed suit, the FBI conducted a search for any cross-references to Agriprocessors Inc. or Sholom Mordechai Rubashkin, in addition to the 'main' files search it had already completed. *Id.* ¶ 19.

Importantly, in the Third Hardy Declaration, the FBI explains that "[b]ased on the nature of the records sought by plaintiff, the CRS is the only FBI system of records where responsive records would reasonably reside absent additional information pointing to records that may reside outside the CRS." Third Hardy Decl. ¶ 6. The FBI explains that the records Plaintiff sought to access pertain to "a specific law enforcement raid and subsequent prosecution," which the FBI characterizes as "criminal investigative records." *Id.* Such records "would be indexed in, and retrieved by, a search of the CRS." *Id.* Most importantly, the FBI explains, "there was no factual basis for the FBI to conclude that responsive records would reside in any databases or systems other than the CRS" and, furthermore, "the records located by the FBI through its automated search of the CRS also provided no indication that other potentially responsive records would exist in any other database or system, including the Electronic Surveillance ("ELSUR") indices." As a result, the FBI concludes, by searching the CRS in this case, it

9

"performed a search for responsive records in the only system where such records would reasonably reside." *Id.* Finally, the FBI declares that any relevant third party communications "would logically be indexed in the criminal investigative file involved in this case," thus "the searches of the CRS that the FBI performed would have likely uncovered documents indexed to any third party involved in the records at issue." *Id.* ¶ 7.

Although the FBI does not offer the strongest justification for the adequacy of its search, the Court finds the FBI has now sufficiently shown that all files reasonably likely to contain responsive materials were searched. *See Mobley v. C.I.A.*, 924 F.Supp.2d 24, 44 (D.D.C. 2013) (finding FBI's justification of search adequate, if "thin," where the FBI averred that "[g]iven the broad search of the comprehensive CRS system and the ELSUR indices . . . [the FBI's acting FOIA chief] determined that there is no reasonable basis to conclude that responsive records are reasonably likely to be located by further searches of shared drives."). Plaintiff's arguments to the contrary are unavailing. Plaintiff first contends that the FBI contradicted its own "implicit premise that criminal investigative records are retained only in the CRS" when it stated that "information on subjects whose electronic and/or voice communications have been intercepted as a result of . . . electronic surveillance conducted by the FBI are separately maintained in the FBI's ELSUR database." Pl.'s Opp'n. at 2. Moreover, Plaintiff argues, the Third Hardy Declaration "does not exclude the possibility that responsive documents are likely to exist in the hard-copy files or on the hard drives of the agents involved in investigating Sholom Rubashkin and/or Agriprocessors, Inc." *Id.* Plaintiff thus faults the FBI for not searching for records in these locations. Plaintiff, however, misconceives the Third Hardy Declaration. The FBI's declaration does not state that criminal investigative records are retained only in the CRS. It states that the CRS is the only system where responsive records *would reasonably reside*, *absent*

*additional indicators* that would point to potentially responsive records in other locations. But

the FBI avers that it found no factual basis in Plaintiff's detailed FOIA request that would

indicate potentially responsive records residing outside the CRS. Moreover, none of the records

located in the search of the CRS in any way indicated that records responsive to Plaintiff's

request would potentially be found in another location, and, in particular, in ELSUR. Plaintiff

does not contest these assertions in the Third Hardy Declaration and they are entitled to a

"presumption of good faith." *SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir.

1991). Thus, contrary to Plaintiff's assertion, the Third Hardy Declaration does exclude the

possibility that records potentially responsive to Plaintiff's request are reasonably likely to be

found in locations outside the CRS. In any event, Plaintiff offers no reasoned argument for why

a search of "hard-copy files, hard drives, or the ELSUR or other databases" would likely locate

responsive documents.[4] "Absent some reason to believe that [these locations] are likely to

---

[4] Plaintiff does argue that

> the FBI uniquely possesses the key piece of information bearing on whether
> responsive material is maintained in ELSUR database: whether Mr. Rubashkin
> and/or Agriprocessors were subject to 'electronic surveillance conducted by the
> FBI.' If so, by the FBI's own description, information pertaining to such
> surveillance would be available in the ELSUR database. Yet despite its unique
> knowledge, the FBI has refused to state whether it conducted electronic
> surveillance on Mr. Rubashkin and/or Agriprocessors.

Pl.'s Opp'n. at 3. Consequently, Plaintiff contends, the Court still has no way to make a
determination as to whether the ELSUR contains documents responsive to Plaintiff's request. *Id.*
However, in so arguing, Plaintiff ignores the fact that the Third Hardy Declaration explicitly
states that based on the *factual* nature of Plaintiff's request and the information in the responsive
records retrieved from the CRS, "there was no indication that other potentially responsive
records would exist in any other database or system, including . . . *ELSUR*." Third Hardy Decl. ¶
6 (emphasis added). The Court finds that the Third Hardy Declaration sufficiently addresses and
resolves Plaintiff's concern that there may be documents responsive to Plaintiff's request in the
ELSUR.

contain responsive materials, [Plaintiff's] arguments are insufficient to require the FBI to conduct further searches. *Mobley*, 924 F.Supp.2d at 44. *See also Valencia-Lucena*, 180 F.3d at 325 ("[T]his court has required agencies to make more than perfunctory searches and, indeed, to follow through on obvious leads to discover requested documents.") (citation omitted); *Campbell v. U.S Dep't of Justice,* 164 F.3d 20, 28 (D.C. Cir. 1998) ("As the relevance of some records may be more speculative than others, the proper inquiry is whether the requesting party has established a sufficient predicate to justify searching for a particular type of record.").

Plaintiff next argues that the FBI's refusal "to search hard-copy files, hard drives, or the ELSUR or other databases" "merely because information in one database, the CRS, did not point toward those other separate sources" is "simply wrong" because the reasonableness of a search "is judged by 'the method of the search rather than its results.'" Pl.'s Opp'n. at 3. However, Plaintiff misinterprets the meaning of this well-worn rule. It is true that the adequacy of a FOIA search is not to be judged by its results, but only in so far as a plaintiff may seek to measure a search's adequacy based purely on the number of results obtained or the nature of the results. *See Iturralde*, 315 F.3d at 315 (finding the failure of an agency "to turn up one specific document in its search does not alone render a search inadequate"); *Ancient Coin Collectors Guild*, 641 F.3d at 514 (rejecting plaintiff's argument that agency search was inadequate because "it turned up only a few emails"). On the contrary, courts have consistently held that the results of a search are relevant in so far as the content of the responsive records may indicate potentially responsive records in other unsearched locations. For example, in *Campbell v. U.S Dep't of Justice*, the D.C. Circuit Court of Appeals held that even though "the FBI started with the reasonable assumption that only a CRS review would be necessary . . . that assumption became untenable once the FBI discovered information suggesting the existence of documents that it

could not locate without expanding the scope of its search." 164 F.3d at 28. In particular, "some of the Bureau's documents suggest[ed]—through administrative annotations and express references in the text—that searching [other records systems] would have identified additional information." *Id.* at 27. Thus, it was not improper for the FBI in this case to consider the results of its search of the CRS to determine whether it had searched all locations where potentially responsive records were reasonably likely to be located.

Plaintiff's final argument is that the FBI makes no attempt to square its assertion that "any relevant communications between third parties . . . would logically be indexed in the criminal investigative file" maintained in the CRS with its own admission that the fruits of electronic searches are maintained in the ELSUR database, or with the possibility that responsive records remain in hard-copy files or on hard drives. Pl.'s Opp'n. at 4. This argument is no more than a reiteration of Plaintiff's first argument this time applied to records of third party communications. As the FBI's search of the CRS—the database most likely to contain these third party communications—did not uncover any record indicating that potentially responsive records could be found in other locations and Plaintiff has offered no reasoned argument to the contrary, the Court finds the FBI searched all files reasonably likely to contain records of third party communications.

In short, the FBI conducted a broad search for potentially responsive records in the database most likely to contain such records and had no factual basis—before or after conducting that search—to believe that responsive documents were likely to be found in any other location. All of Plaintiff's challenges to the adequacy of the FBI's search for responsive records are insufficient to defeat the FBI's entitlement to summary judgment on this issue. Accordingly, the Court finds the FBI's search was reasonably calculated to uncover all responsive documents.

*See Oglesby v. Department of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990) (holding that in order for a search to be found adequate an agency's affidavits should show "that the search method was reasonably calculated to uncover all relevant documents" and "identify the terms searched or explain how the search was conducted" and "explain in its affidavit that no other record system was likely to produce responsive documents.").

### B.      FBI's Withholdings

In its August 2013 Memorandum Opinion and Order, the Court granted summary judgment in the FBI's favor with respect to the FBI's withholding of information pursuant to FOIA Exemptions 3, and, in most cases, Exemptions 6 and 7(C), and 7(E). The Court, however, held in abeyance the parties' motions with respect to the FBI's application of Exemptions 6 and 7(C) on twenty-seven specific pages, the FBI's application of Exemption 7(D), and the FBI's application of Exemption 7(E) on five specific pages. The Court requested the FBI supplement its Motion for Summary Judgment in respect to the withholdings held in abeyance. The FBI subsequently filed the Renewed Motion for Summary Judgment presently before the Court. In response to the FBI's Renewed Motion, Plaintiff continues to contest the FBI's invocation of FOIA exemptions 6 and 7(C), 7(D), and 7(E). The Court has reviewed in their entirety the approximately 250 pages on which the FBI invoked exemptions that the Court held in abeyance in its August 2013 Order. The Court reviewed these pages in their redacted, unredacted, and, where applicable, newly revised versions. The Court now addresses the propriety of each exemption in turn.

### 1.      Exemptions 6 and 7(C)

FOIA Exemption 6 provides that an agency may withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of

personal privacy." 5 U.S.C. § 552(b)(6). Similarly, Exemption 7(C), in relevant part, permits an agency to withhold "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). "The courts have construed this provision as permitting exemption if the privacy interest at stake outweighs the public's interest in disclosure." *Nation Magazine*, *Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 893 (D.C. Cir. 1995). As the Plaintiff does not dispute the fact that the records at issue in this case were compiled for law enforcement purposes as required for Exemption 7(C), the Court has "no need to consider Exemption 6 separately because all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)." *Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011).

In response to the parties' prior cross-motions for summary judgment, the Court reviewed *in camera* the pages on which the FBI invoked Exemptions 6 and 7(C). The Court found that on twenty-seven specific pages "the FBI redacted information describing actions taken (or not taken) by third parties that does not appear to identify any third party whose identity might be protected by Exemption 6 or Exemption 7(C)." Mem. Op. (Aug. 11, 2013), at 16. Therefore, the Court ordered the FBI to either revise its redactions or provide a supplemental explanation of the use of Exemptions 6 and 7(C) with respect to the pages identified by the Court. *Id.* The Court found the FBI was otherwise entitled to summary judgment with respect to its use of Exemptions 6 and 7(C). *Id.* at 17.

In the Third Hardy Declaration accompanying the FBI's Renewed Motion for Summary Judgment, the FBI explains that it reviewed the pages identified by the Court and "determined

additional information could be segregated for release, but only to the extent that release of the information would not reveal the identity of the third party." Third Hardy Decl. ¶ 10. As to Rubashkin-934 and Rubashkin-935, however, the FBI maintained all redactions because "the mosaic effect of disclosure of pieces of information could potentially lead to the identification of the third parties." *Id.* ¶ 10 n. 2. The FBI attached the revised version of the pages at issue to the Third Hardy Declaration. *See Id.*, Ex. A. Plaintiff argues that, despite the revisions, the FBI continues to withhold "extensive information" that could not be used to identify a third party. Pl.'s Opp'n. at 5. Finally, Plaintiff argues that summary judgment should not be granted in favor of the FBI because "the FBI provides no further details or explanation regarding the information it continues to withhold under Exemptions 6 and 7(C)" in contravention of the Court's Order. *Id.* at 4-5.

The Court finds that the FBI has properly revised its redactions on all except one of the twenty-seven pages identified by the Court in its August 2013 Order. On Rubashkin-793, the Court finds that the FBI has continued to redact information that would not identify a third party protected by Exemption 6 or 7(C). Specifically, the Court finds that the following information in the fourth paragraph on Rubashkin-793 would not identify a third party and thus must be released to Plaintiff: (1) the word immediately preceding the non-redacted phrase "He compared his" in the second line; (2) the six words in the third line immediately following the non-redacted phrase "ads to that of someone"; and (3) the five words in the sixth and seventh lines immediately following the non-redacted phrase "is the only person."

Otherwise, the Court agrees that the FBI has properly revised the pages identified in the Court's August 2013 Order such that only information that could identify a third party protected by Exemptions 6 and 7(C) is redacted. The Court disagrees with Plaintiff's argument that, in

violation of the Court's August 2013 Order, "the FBI provides no further details or explanation regarding the information it continues to withhold under Exemptions 6 and 7(C)." The Third Hardy Declaration states that the FBI released information "to the extent that release of the information would not reveal the identity of the third party." Third Hardy Decl. ¶ 10. The logical understanding of this declaration is that the redactions the FBI maintained on the pages at issue withheld information that identifies third parties. The Court's *in camera* review of these pages confirms this understanding. Moreover, for Rubashkin-934-935, the only two pages where the FBI did not release additional information, the FBI explains that it maintained these redactions because "the mosaic effect of disclosure of pieces of information could potentially lead to the identification of the third parties." *Id.* ¶ 10 n. 2. Accordingly, the Court finds the FBI has offered sufficient justification for the redactions it has maintained. *See Am. Civil Liberties Union*, 628 F.3d at 619 ("If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone."). The court finds the FBI's redactions particularly appropriate and necessary to protect the privacy interests of third parties given the small community in which the crime that is the subject of Plaintiff's FOIA request took place. *See Concepcion v. F.B.I*, 606 F.Supp.2d 14, 42 (D.D.C. 2009) (upholding the redaction of information under Exemption 7(C) "that could possibly identify [the source], including dates and places where he/she has been"); *Singh v. F.B.I.*, 574 F.Supp.2d 32, 49 (D.D.C. 2008) (upholding the redaction of information that "would allow a person familiar with the facts and circumstances of the investigation to identify the individuals"); *Alirez v. NLRB*, 676 F.2d 423, 428 (10th Cir. 1982) (finding that deletion of names

and other identifying data pertaining to small group of co-workers was simply inadequate to protect them from embarrassment or reprisals because requester could still possibly identify individuals).

In addition, the Court notes that on Rubashkin-323, the FBI cited only Exemptions 6 and 7(C) even though in the Hardy Declarations, this page is listed as a page on which information has been withheld pursuant to Exemption 7(D). *See* Hardy Decl. ¶ 46 n.19; Third Hardy Decl. ¶ 12. Upon the Court's *in camera* review of this page, the Court confirmed that Rubashkin-323 contains information that would reveal the identity of and information provided by an individual whom the Court finds spoke to the FBI with an implied understanding of confidentiality (as explained in the following section). Accordingly, the Court finds all of the information withheld on Rubashkin-323 to have been properly withheld under Exemption 7(D). Likewise, the Court finds the information listed as withheld pursuant to both Exemptions 7(C) and 7(D) on Rubashkin-934 and Rubashkin-935, was properly withheld pursuant to Exemption 7(D), as explained in the following section. As for the remaining information on Rubashkin-935, which the FBI withheld only under Exemption 6 and 7(C), upon further consideration, the Court agrees with the FBI that the information currently redacted, if released, would lead to the identification of the third parties protected by Exemptions 6 and 7(C). Accordingly, the Court grants summary judgment in the FBI's favor as to all information withheld pursuant to Exemptions 6 and 7(C), except for the information outlined above on Rubashkin-793, which the Court orders the FBI to release to Plaintiff.

2.      Exemption 7(D)

In regards to an agency's invocation of Exemption 7(D) to protect the identities of, and information received from, individuals who provided information to the agency and/or local law

18

enforcement during the course of the investigation into the criminal activities, the D.C. Circuit has held that

> Where . . . the records at issue were 'compiled by criminal law enforcement authorit[ies] in the course of a criminal investigation,' they are covered by Exemption 7(D) if producing the records 'could reasonably be expected to disclose the identity of a confidential source' or 'information furnished' by such a source. 5 U.S.C. § 552(b)(7)(D). The agency invoking Exemption 7(D) bears the burden of proving that it applies, and with respect to the FBI, it is not enough for the agency to claim that all sources providing information in the course of a criminal investigation do so on a confidential basis.

*Roth*, 642 F.3d at 1184. "When no express assurance of confidentiality exists, courts consider a number of factors to determine whether the source nonetheless 'spoke with an understanding that the communication would remain confidential.'" *Id.* (quoting *U.S. Dep't of Justice v. Landano*, 508 U.S. 165, 172 (1993)). The relevant factors include "'the character of the crime at issue,' 'the source's relation to the crime,' whether the source received payment, and whether the source has an 'ongoing relationship' with the law enforcement agency and typically communicates with the agency 'only at locations and under conditions which assure the contact will not be noticed.' *Id.* (quoting *Landano*, 508 U.S. at 179). "The nature of the crime investigated and informant's relation to it are the most important factors in determining whether implied confidentiality exists." *Singh*, 574 F.Supp.2d at 50 (citing *Landano*, 508 U.S. at 179-80). "The pertinent question is whether the violence and risk of retaliation that attend this type of crime warrant an implied grant of confidentiality for such a source." *Mays v. Drug Enforcement Admin.*, 234 F.3d 1324, 1329 (D.C. Cir. 2000).

In the first Hardy Declaration, the FBI explained that the individuals at issue in this case "were interviewed under circumstances in which an assurance of confidentiality may be implied since the individuals were reporting on fraudulent financial activities concerning the plaintiff and others," and "[i]f the interviewee's identities were to be released, it would likely subject them to

19

harassment or reprisal." Hardy Decl. ¶ 46. The entirety of Plaintiff's argument regarding Exemption 7(D) in his cross-motion was that the FBI "redact[ed] significant portions of documents, including entire paragraphs that appear to sweep in non-exempt information regarding the long-completed investigation and prosecution of Mr. Rubashkin that FOIA required the FBI to segregate and disclose." Pl.'s Cross-Mot. at 11-12. It was not until his reply brief that the Plaintiff challenged the adequacy of the FBI's showing that the interviewees were *implicitly* assured that their identities would remain confidential. As a result, the Court provided the FBI an opportunity to respond to the new argument in the Plaintiff's reply before the Court determined whether the FBI is entitled to summary judgment regarding its use of Exemption 7(D).

In its Renewed Motion for Summary Judgment, the FBI now argues that "given the character of the crime at issue (involving long term incarceration [and financial fraud]), the source's relation and proximity to the crime, the circumstances under which they were interviewed, and the risk assumed by these individuals, it is reasonable to conclude that these individuals would have provided the information under an implied promise of confidentiality." Def.'s Renewed Mot. for Summ. J. at 10-11. Specifically, the FBI argues that although the individuals who provided information were not paid sources, "they were in a position to obtain valuable information due to their access and close proximity to the criminal elements involved in these crimes." Third Hardy Decl. ¶ 11. As the information these individuals provided "aided in the conviction of perpetrators who were exposed to severe penalties, including long term incarceration," they assumed an "inherent risk" "by providing information to law enforcement in this context." *Id.* Furthermore, the FBI asserts, "the information provided by these individuals is singular in nature and it is reasonable to infer that given their access and close proximity [] it was

20

provided with the inherent understanding that neither their identities, nor the information they provided, would be disclosed to the public. *Id.* The FBI concludes that "given these circumstances, it is reasonable to conclude that these individuals would reasonably fear that disclosure of their identity would place them in danger and/or would likely subject them to harassment or reprisal." *Id.*

Plaintiff responds that the FBI does not offer any developed factual or legal arguments to demonstrate that it has met the *Landano* factors for establishing that the individuals the FBI seeks to protect were implicitly assured confidentiality. Pl.'s Opp'n. at 6. Plaintiff contends that the FBI only offers "conclusory assertions that the alleged crimes involved fraudulent financial activities and that the interviewees were interviewed under circumstances in which an assurance of confidentiality may be implied." *Id.* These assertions, Plaintiff argues, are insufficient to discharge the FBI's burden. *Id.*

Plaintiff is correct that "[u]nder our case law, agencies invoking a FOIA exemption must provide a specific, detailed explanation of why the exemption applies to the withheld materials." *Roth*, 642 F.3d at 1185 (citing *Vaughn v. Rosen,* 484 F.2d 820, 826–28 (D.C. Cir. 1973)). "Reviewing documents *in camera* is no 'substitute for the government's obligation to provide detailed public indexes and justifications whenever possible.'" *Id.* (quoting *Lykins v. U.S. Dep't of Justice,* 725 F.2d 1455, 1463 (D.C. Cir. 1984)). Nevertheless, courts in this circuit have recognized "that there are occasions when extensive public justification would threaten to reveal the very information for which a FOIA exemption is claimed." *Lykins,* 725 F.2d at 1463. "Although in such a case an agency is still required to provide as much public explanation as it can without 'giving away the information it is trying to withhold,' it may supplement its explanation by making the documents available for *in camera* review." *Roth*, 642 F.3d at 1185

(quoting *Lykins*, 725 F.2d at 1463-64). Here, while the FBI has made review of this case particularly difficult by sweeping several distinct categories of informants into its broad brush explanation of their implied assurance of confidentiality, the Court still finds that the FBI has generally struck an appropriate balance, explaining to the extent it can in the Third Hardy Declaration why it has concluded that certain sources provided information under an implied assurance of confidentiality and then relying on *in camera* judicial review to confirm its conclusions. The Court finds this balance particularly appropriate in light of the small community in which the financial fraud was perpetrated.

The Court notes at the outset that every instance in which the FBI has invoked Exemption 7(D) to justify its withholding information it has also invoked Exemptions 6 and 7(C). Exemption 7(D) is more expansive than 7(C) because it covers "records or information compiled by criminal law enforcement authorities in the course of criminal investigations if their release could reasonably be expected to disclose the identity of, as well as *information provided by*, a confidential source." *Computer Prof'ls for Social Responsibility v. United States Secret Serv.*, 72 F.3d 897, 905 (D.C. Cir. 1996) (emphasis added). Exemption 7(C) only protects the disclosure of identifying information. Accordingly, the Court shall first consider the FBI's invocation of Exemption 7(D).

Having undertaken a thorough *in camera* review of the information withheld by the FBI pursuant to Exemption 7(D), the Court concludes that for most, but not all, of the redacted documents where the FBI has invoked Exemption 7(D), the FBI has met its burden of establishing that the individuals whose identities and information the FBI withheld provided information to the FBI under an implied assurance of confidentiality. The Court recognizes that this is not a case where the violent nature of the crime at issue—for example, homicide, drug

trafficking, gang-related crime, terrorism, or government overthrow—"characteristically supports an inference of confidentiality" that a court can generically apply to all informants. *Landano*, 508 U.S. at 177. Here, the crime about which the informants were providing information was a non-violent financial crime. Still, the Court finds that the severity of the crime and the close association that certain informants had with Mr. Rubashkin, Agriprocessors, or Mr. Rubashkin's fraudulent activity permit a reasonable inference that for these informants "the communication in all likelihood would not have been made if confidentiality had not been assured." *Ortiz v. U.S. Dep't of Health and Human Services*, 70 F.3d 729, 734 (2nd Cir. 1995) (quoting *Brant Const. Co., Inc v. U.S. E.P.A.*, 778 F.2d 1258, 1264 (7th Cir. 1985); *see also Keys v. United States Dep't of Justice*, 830 F.2d 337, 345 (D.C. Cir. 1987) (concluding an implied assurance of confidentiality arose, in part because "it is reasonable to infer from the circumstances that its absence would impair [defendant's] ability to elicit the information.").

Specifically, as the FBI averred in its Third Hardy Declaration, these informants provided information about a financial fraud perpetrated by Mr. Rubashkin that resulted in his incarceration in federal prison for a term of twenty-seven years. Third Hardy Decl. ¶ 11; Hardy Decl. ¶ 27. While the length of the incarceration or even the potential for incarceration was unknown to the informants at the time they provided information to the FBI, Mr. Rubashkin's lengthy sentence reflects the severity of the crime about which the informants were providing information. Indeed, Mr. Rubashkin was convicted of 86 counts of financial fraud and related offenses. *See* Hardy Decl. ¶ 27. The Court takes judicial notice that Mr. Rubashkin—for whom Plaintiff in this case is Counsel—was convicted of several counts each of bank fraud, loan and credit application fraud generally, wire fraud, frauds and swindles, money laundering, and violations of an order of the Secretary of Agriculture. *United States v. Rubashkin*, 655 F.3d 849,

855 (8th Cir. 2011). Among his many costly frauds, Mr. Rubashkin defrauded First Bank Business Capital out of nearly $30 million. *Id.* Mr. Rubashkin also regularly used many Agriprocessor's employees and other individuals to perpetrate his fraud over a nearly decade-long period. *Id.* at 853. Courts have found informants to have spoken under implied assurances of confidentiality when they provided information about similarly severe non-violent financial crimes, for example, an investigation into a suspect who had committed crimes of "racketeering activity, wire fraud, money laundering, loan sharking, extortion, obstruction of justice, aiding and abetting, securities fraud, and embezzling funds from a labor organization." *Wolfson v. U.S.*, 672 F.Supp.2d 20, 33 (D.D.C. 2009); *see also McQueen v. United States*, 264 F.Supp.2d 502, 522-24 (S.D.Tex. 2003), *aff'd,* 100 Fed.Appx. 964 (5th Cir. 2004) (confidential informant who provided information pertaining to the crimes of willfully attempting to evade federal diesel fuel excise taxes and conspiracy to commit such an offense is entitled to a "categorical presumption of implied confidentiality," because this "particular kind of tax fraud-involving big dollars, complex operations, vast numbers of transactions, and many people-is not qualitatively unlike other crimes . . . such as organized crime, loan sharking and gambling, and bribery" that courts have found entitled to a categorical presumption of implied confidentiality). Even if the severity of the financial crime at issue here is not sufficient in and of itself to sustain a blanket presumption of confidentiality as to all individuals who provided information to the FBI about the financial fraud, the Court finds that the crime is nevertheless of such a severity that those who were in close personal and professional relationships with Mr. Rubashkin and/or Agriprocessors or were closely associated with the fraud and provided damaging information would reasonably fear reprisal or harassment if the fact that they were providing information to the FBI was revealed. *See Shrecker v. U.S. Dep't of Justice*, 74 F.Supp.2d 26, 35 (D.D.C. 1999),

*aff'd in pertinent part & rev'd in part on other grounds*, 254 F.3d 162 (D.C. Cir. 2002) (finding that crimes of passport fraud and contempt of Congress merit an inference of implied confidentiality where the informant reported "facts known only by those involved in the same criminal enterprise" as the criminal involved in the passport fraud and contempt of Congress); *Cofield v. City of LaGrange, Georgia*, 913 F.Supp. 608, 618-619 (D.D.C. 1996) (finding an implied assurance of confidentiality in voting rights investigation because those questioned were individuals "closely associated with decision makers in local or state government and whose livelihoods or personal safety might be in jeopardy if their contact with the Department of Justice was disclosed); *see also Canning v. U.S. Dep't of Justice*, 567 F.Supp.2d 104, 111-112 (D.D.C. 2008). The Court is further inclined to find implied assurances of confidentiality in light of the fact that documents released to Plaintiff by the FBI, *see* Rubashkin-874, indicated that those who publicly spoke out against Mr. Rubashkin and Agriprocessors subsequently received threats. *See McQueen*, 264 F.Supp.2d at 523-24 (finding in the alternative that requestor's prior threats and ability to harm witnesses justified a finding of implied assurances of confidentiality).

Accordingly, the Court holds that the FBI properly withheld information pursuant to Exemption 7(D) on the following pages: Rubashkin-5-10; Rubashkin-21-29; Rubashkin-39-42; Rubashkin-52; Rubashkin-55-57; Rubashkin-61-62; Rubashkin-65-69; Rubashkin-78-79; Rubashkin-90-93; Rubashkin-97-101; Rubashkin-104-110; Rubashkin-123-136; Rubashkin-148-151; Rubashkin-167-170; Rubashkin-181-188; Rubashkin-230-241; Rubashkin-308-309; Rubashkin-312-313; Rubashkin-316-322; Rubashkin-324-340; Rubashkin-383-389; Rubashkin-447-450; Rubashkin-558-561; Rubashkin-645[5]-647; Rubashkin-650-662; Rubashkin-667-668;

---

[5] The Court notes that the FBI did not actually invoke Exemption 7(D) on Rubashkin-645, however, the Court believes this was inadvertent since this page is the first page of an

Rubashkin-700-714; Rubashkin-727-728; Rubashkin-740-746; Rubashkin-769-773; Rubashkin-775-777; Rubashkin-818-825; Rubashkin-852-855; Rubashkin-864-872.  In addition, the Court finds the FBI properly withheld information pursuant to Exemption 7(D) on Rubashkin-933-941 because the redacted information would identify an individual who, at the outset of the interview with the FBI, explicitly expressed serious concerns about the individual's identity and the information provided being revealed.  *See Roth*, 642 F.3d at 1185-86 ("we think it obvious that most of these individuals provided information under an express or implied assurance of confidentiality. The documents [at issue] convey information provided by two sources who "specifically requested [that] their identities not be disclosed because they feared reprisal.").  The Court grants summary judgment in the FBI's favor with respect to the FBI's withholding of information pursuant to Exemption 7(D) on the pages listed above.  The Court also finds that on the pages listed above the FBI properly invoked Exemptions 6 and 7(C) to redact information that would identify third parties protected under these exemptions.[6]

For several documents, specifically, Rubashkin-142-147; Rubashkin-738-739; Rubashkin-880; Rubashkin-924, the Court found it unnecessary to consider the FBI's invocation of Exemption 7(D) "because the limited amount of information that the FBI withheld based on

---

interview with an informant which the FBI has otherwise sought to withhold pursuant to Exemption 7(D).

[6] At no point during this litigation has Plaintiff challenged the FBI's application of Exemption 7(C) to redact identifying information of third parties, except for information pertaining to Chief Judge Linda Reade, which the Court resolved in its last opinion, *see* Mem. Op. (Aug. 11, 2013), at 17-22, and except to argue that the FBI has redacted more information than would actually identify a third party, Pl.'s Cross-Mot. at 11; Pl.'s Opp'n. at 4-5.  Plaintiff has not and does not "dispute the privacy interests of the third parties mentioned in the documents at issue in this case would be compromised by disclosure of the withheld information, and does not suggest the release of the information would advance any significant public interest."  Mem. Op. (Aug. 11, 2013), at 17.

this rationale also implicates personal privacy interests and thus falls within the scope of Exemption 7(C)," which the FBI simultaneously invoked. *Roth*, 642 F.3d at 1185. Accordingly, the Court grants summary judgment in the FBI's favor with respect to the FBI's withholding of information pursuant to Exemptions 6 and 7(C) on these pages.

However, the Court finds that on Rubashkin-778-792 the FBI did not meet its burden of establishing that the individuals whose information was redacted provided information to the FBI with an implied assurance of confidentiality. Nothing about the circumstances in which these individuals were interviewed or about their relationship to the crime indicates that they would not have provided information to the FBI without an understanding that their information and identity would remain confidential. Accordingly, the Court denies summary judgment to the FBI and grants summary judgment in Plaintiff's favor as to the FBI's invocation of Exemption 7(D) on these pages. The Court does find, however, that much of the information on these fifteen pages was properly withheld pursuant to Exemption 7(C), which the FBI simultaneously invoked. Thus, the Court orders the FBI to release all information on these fifteen pages, except for the information that identifies third parties protected under 7(C). An Appendix identifying the information to be released to Plaintiff on these fifteen pages is attached to this opinion.

        3.      <u>Exemption 7(E)</u>

Exemption 7(E) authorizes an agency to withhold

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law

5. U.S.C. § 552(b)(7)(E). In response to the parties' prior cross-motions for summary judgment, the Court held that the FBI had met its burden of showing that Exemption 7(E) applied, except as

to the information redacted from Rubashkin-56, Rubashkin-139, Rubashkin-157, and Rubashkin-734-735.  The Court found it "unclear . . . how the information on these [five] pages reflects internal FBI methodology, or how the disclosure of this information would enable perpetrators to alter their behavior and thwart detection."  Mem. Op. (Aug. 11, 2013), at 25.

In its Renewed Motion for Summary Judgment, the FBI maintains that its invocation of Exemption 7(E) on these pages was proper.  Def.'s Renewed Mot. for Summ. J. at 13.  Specifically, as to Rubashkin-734-735, the FBI argues that the redacted information was properly withheld because it

> Pertains to a specific questionnaire prepared by an FBI [Special Agent] who was involved in investigating allegations of potential obstruction of justice.  This questionnaire contains specific questions, the rationale for a particular question, and recommendations to be followed by [Special Agents] conducting the interrogation.  This questionnaire was created as an investigative tool to be used exclusively in the investigation of potential obstruction of justice allegations that surfaced in the investigation of plaintiff's client and others, and exposes the very information [the] FBI deems relevant in investigating these types of offenses.[7]

Third Hardy Decl. ¶ 15.  The FBI further declares that "criminals could predict investigative questions, and [ ] adjust their responses and behaviors to avoid detection or mislead investigations."  *Id.*

Plaintiff faults the FBI's explanation for "merely assert[ing], without explanation, that disclosure of these questions could somehow 'permit[] criminals to predict investigative questions, and to adjust their responses and behaviors to avoid detection or mislead

---

[7] In its August 2013 opinion, the Court noted that while the FBI invoked 7(E) because the list of questions revealed techniques "used in the investigation of *financial crimes*," the document clearly indicated that the list of questions were formulated to investigate potential *obstruction of justice* charges.  Mem. Op. (Aug. 11, 2013), at 24.  In the Third Hardy Declaration, the FBI explains that it inadvertently claimed that the investigative technique related to financial crimes because the main investigation related to financial crimes, but that, in fact, the technique at issue related to obstruction of justice crimes.  Third Hardy Decl. ¶ 15 n. 3.

investigations." Pl.'s Opp'n. at 7.  Plaintiff further argues that "the FBI acknowledges that these questions were tailored to the specific allegations against Mr. Rubashkin and others in one specific case," thus, it "remains unclear how disclosure of these questions might contribute to some future obstruction of justice crime." *Id.*

The Court finds the FBI has now met its burden of establishing that 7(E) exempts the series of questions withheld on Rubashkin-734-735.  Release of the redacted questions would disclose what the FBI deems relevant to investigating obstruction of justice cases.  Furthermore, the redacted information includes the FBI's rationale for one particular question as well as recommendations of follow-up questions.  As for the risk of circumvention of the law if the FBI's investigative technique is disclosed, the Court notes that "a highly specific burden of showing how the law will be circumvented" is not required; instead, "exemption 7(E) only requires that [the agency] 'demonstrate[ ] logically how the release of [the requested] information might create a risk of circumvention of the law.'" *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (quoting *PHE, Inc. v. Dep't of Justice*, 983 F.2d 248, 251 (D.C. Cir. 1993).  Here, the FBI has logically and reasonably explained how releasing what the FBI deems relevant to obstruction of justice investigations would allow criminals to "adjust their responses and behavior to circumvent the law."  Third Hardy Decl. ¶ 15.  As the FBI's declaration sets out the type of questions involved and reasonably explains how disclosure of these questions could create a risk of circumvention of the law, the Court concludes that the records were properly withheld under Exemption 7(E).  *See American Immigration Lawyers Ass'n v. U.S. D.H.S*, 852 F.Supp.2d 66, 79 (D.D.C. 2012) (upholding agency's withholding pursuant to Exemption 7(E) of Immigration and Customs Enforcement questionnaire used by site inspectors to document their personal observations because the information withheld would

provide "guidance" to those looking to circumvent the law, which would thwart future law enforcement efforts). Accordingly, the Court grants summary judgment in the FBI's favor as to the withholding of information on Rubashkin-734-735 pursuant to Exemption 7(E).

As to Rubashkin-56, Rubashkin-139, and Rubashkin-157, the FBI asserts that redactions were necessary to "protect information pertaining to various FBI investigative techniques and/or procedures used by the FBI in conducting criminal and national security related investigations, including mechanisms available pursuant to the Bank Secrecy Act ("BSA")." Third Hardy Decl. ¶ 16. Specifically, the FBI explains that the BSA mandates that "a report and records of reports are exempt from disclosure under section 552 of Title 5" of the FOIA. *Id.* The FBI further explains that "[a]lthough the nature or the types of reports which can be obtained pursuant to the BSA are known to the public, to specifically identify the particular information withheld in these records would reveal information which is intended to be protected pursuant to . . . the [BSA]." *Id.* The FBI concludes that "[r]evelations as to the specific techniques and/or procedures would constitute a violation of the BSA and would risk circumvention of the law by providing criminals with insight about the particular tool(s) under the BSA used by the FBI." *Id.* In its Reply brief, the FBI argues in the alternative that this information would properly be exempt under FOIA Exemption 3 as the BSA explicitly exempts from FOIA disclosure "reports and records of reports" created pursuant to the BSA.

Plaintiff argues that the FBI's support for its withholding information on these three pages is insufficient because the FBI "does not provide any factual support for its barebones assertion that these materials are protected by the Act." Pl.'s Opp'n. at 8. Plaintiff faults the FBI for "not even identify[ing], in generic terms, the information redacted or the type of report involved, even though the FBI acknowledges that "the nature or type of reports which can be

obtained pursuant to the [Act] are known to the public." *Id.* Moreover, Plaintiff argues, "the FBI does not explain how disclosure of the redacted information would permit circumvention of the law or evasion of FBI investigative efforts in future cases." *Id.*

The Court finds the information withheld on Rubashkin-56, Rubashkin-139, and Rubashkin-157 is most firmly exempt under Exemption 3.[8] FOIA Exemption 3 exempts from disclosure information "specifically exempted from disclosure by statute (other than section 552b of this title), if that statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue." 5 U.S.C. § 552(b)(3). The BSA specifically states that "a report [created pursuant to the BSA] and records of reports are exempt from disclosure under section 552 of title 5." 31 U.S.C. § 5319. Here, the FBI seeks to withhold records of reports created pursuant to the BSA. *See Berger v. I.R.S.*, 487 F.Supp.2d 482, 496 (D.N.J. 2007), *aff'd*, 288 Fed.Appx. 829 (3rd Cir. 2008) (finding that information "derived or extracted directly from [BSA] reports" was properly withheld under Exemption 3). Accordingly, the Court finds this information to be properly withheld pursuant to Exemption 3.

While the FBI did not raise Exemption 3 as a justification for withholding information on these three pages until its Reply brief, the Court finds the FBI has not waived raising Exemption 3. In *Cuban v. SEC*, 795 F.Supp.2d 43, 61-63 (D.D.C. 2011), the district court found information withheld by the Securities and Exchange Commission to be properly withheld pursuant to Exemption 3 even though the agency did not invoke Exemption 3 until its motion for

---

[8] The Court notes that in its August 2013 memorandum opinion and order, the Court found certain bank reports and records of bank reports exempt pursuant to 7(E). The Court finds these reports and records of reports would also be exempt from disclosure under Exemption 3, however, in their pleadings leading up to the Court's August 2013 Order, the parties did not raise Exemption 3 as a basis for withholding this information. The Court now finds that this information is more firmly exempt under Exemption 3.

reconsideration. The district court was willing to consider Exemption 3's applicability in part because the exemption had been raised prior to the commencement of any appellate proceedings. 795 F.Supp.2d at 61, 62 (citing *Williams v. F.B.I.*, No. 91-cv-1054, 1997 WL 198109, at *2 (D.D.C. Apr. 16, 1997) ("the policy militating against piecemeal legislation [wa]s less weighty where the district court proceedings [were] not yet complete."). Furthermore, the plaintiff, in its opposition to defendant's motion for reconsideration, had had an opportunity to respond to the defendant's late invocation of Exemption 3. *Id.* at 62. Finally, and most importantly, the district court explained that courts "cannot overlook the importance of protecting information in the suspicious activity reports, especially when it is explicit in the statute that the information should not be disclosed," *id.*, and noted that "there is no rule that prohibits the district court, *sua sponte*[,] from applying the law in order to achieve a just result." *Id.* at 61 (quoting *Williams*, 1997 WL 198109, at *2).

Similarly, here, the FBI raised the applicability of Exemption 3 in its Reply supporting its Renewed Motion for Summary Judgment and thus prior to the completion of the district court proceedings. Moreover, the FBI's initial Renewed Summary Judgment brief and the Third Hardy Declaration discussed in detail how the BSA exempts the information at issue here from FOIA disclosure. *See* Def.'s Renewed Mot. for Summ. J. at 14-15; Third Hardy Decl. ¶ 16. In his Opposition to Defendant's Renewed Motion for Summary Judgment, Plaintiff specifically engages the FBI's argument about the applicability of the BSA's exemptions and contends that the FBI has failed to present sufficient factual support for its assertion that the redacted materials are protected by the BSA. *See* Pl.'s Opp'n. at 8. While the FBI's discussion of the BSA was initially offered as a justification for the applicability of Exemption 7(E), the FBI's argument regarding the applicability of the BSA's exemptions as a basis for Exemption 3 is no different.

Thus, the Court finds Plaintiff had an opportunity to respond to the argument that is the foundation of the FBI's invocation of Exemption 3.[9]  In light of this, and the BSA's clear command that records of BSA reports shall not be disclosed, the Court finds it appropriate to consider the FBI's invocation of Exemption 3 "in order to achieve a just result." *Williams*, 1997 WL 198109, at *2.  Accordingly, the Court grants summary judgment in the FBI's favor as to the withholding of information on these three pages pursuant to Exemption 3.

### C. *Segregability*

Finally, the Court must consider whether the FBI has released all reasonably segregable information to Plaintiff.  FOIA instructs that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b); *see also Mead Data Ctr., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) ("[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.").  In the Third Hardy Declaration, Mr. Hardy avers that "after extensive re-review of the documents at issue, I have determined that no additional reasonably segregable portion of the material is releasable beyond those pages re-reviewed and released herein."  Third Hardy Decl. ¶ 8.  "The [FBI's] conclusion on a matter of law is not sufficient support for a court to conclude that the self-serving conclusion is the correct one." *Stolt-Nielsen Transp. Grp. Ltd. v. United States*, 534 F.3d 728, 734 (D.C. Cir. 2008).  Nevertheless, upon its extensive review of the documents at issue in this

---

[9] The Court notes that it is firmly established in this Circuit that the BSA is a proper basis for invoking an Exemption 3 withholding.  *See, e.g., Marcusse v. U.S. Dep't of Justice Office of Information Policy*, --- F.Supp.2d---, 2013 WL 4505292, *8 (D.D.C. 2013); *Cuban*, 795 F.Supp.2d at 61-63.  Accordingly, any viable dispute Plaintiff would have with the FBI's invocation of Exemption 3 would relate to the applicability of the BSA to the information withheld. As the Court notes above, Plaintiff already engaged this argument in his Opposition to the FBI's Renewed Motion for Summary Judgment.

case, the Court finds the FBI has now produced to the Plaintiff all *reasonably* segregable, non-exempt information, except for the limited information the Court has specifically identified in this opinion as non-exempt and thus releasable to Plaintiff. *Mead Data*, 566 F.2d at 261 n.55 ("[A] court may decline to order an agency to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content.").

## IV. CONCLUSION

For the foregoing reasons, the FBI's [71] Renewed Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART, and the FBI's [47] Motion for Summary Judgment and Plaintiff's [51] Cross-Motion for Summary Judgment, portions of which were previously held in abeyance, are DENIED IN PART and GRANTED IN PART. Specifically, the FBI's motions for summary judgment are GRANTED and Plaintiff's cross-motion DENIED as to the adequacy of the FBI's search. The FBI's motions are also GRANTED and Plaintiff's cross-motion DENIED as to the information the FBI withheld pursuant to Exemptions 6 and 7(C) on twenty-six of the pages identified in the Court's August 2013 Order.[10] However, the FBI's motions are DENIED and Plaintiff's cross-motion GRANTED as to the specific information identified in this opinion as improperly withheld pursuant to Exemptions 6 and 7(C) on Rubashkin-793. The Court orders the FBI to release this information to Plaintiff by no later than **February 13, 2014**. The FBI's motions are also GRANTED and Plaintiff's cross-motion DENIED as to the information the FBI withheld pursuant to Exemptions 7(D) and 6 and 7(C) on all pages except for Rubashkin-778-792. The FBI's motions are DENIED and the Plaintiff's

---

[10] As to the withholding of information on Rubashkin-323, the Court grants the FBI's motions for summary judgment and denies Plaintiff's cross-motion pursuant to Exemption 7(D) instead.

cross-motion GRANTED as to the withholding of information on Rubashkin-778-792 pursuant to Exemption 7(D).  However, the FBI's motions are GRANTED and Plaintiff's cross-motion DENIED as to the withholding of information pursuant to Exemptions 6 and 7(C) on these fifteen pages.  The Court orders the FBI to release to Plaintiff the information on these pages which does not identify a third party protected under Exemptions 6 and 7(C) (*see* attached Appendix) by no later than **February 13, 2014**.  Finally, the FBI's motions are GRANTED and Plaintiff's cross-motion DENIED as to the information withheld pursuant to Exemption 3 and 7(E).

      An appropriate Order accompanies this Memorandum Opinion.

                                         */s/*
                                 **COLLEEN KOLLAR-KOTELLY**
                                 UNITED STATES DISTRICT JUDGE

# APPENDIX

The Court orders that the following information be **<u>RELEASED</u>** on the following pages:

- **Rubashkin-778**

  - **Fifth full paragraph**: all text except for the first two sentences of the paragraph, and names and related pronouns of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-779**

  - **First partial paragraph, the third, fourth, fifth full paragraphs, and the final partial paragraph**: all text except for the names, related pronouns, and relationship titles of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-780**

  - **First partial paragraph, first, second, and fourth full paragraphs, and the final partial paragraph**: all text except for the names, related pronouns, and professional titles/job identifiers of third parties protected by Exemptions 6 and 7(C).
  - **Third full paragraph**: all text except for the first three sentences and names, related pronouns, and relationship titles of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-781**

  - **First partial paragraph**: all text except for the last sentence of the paragraph and identifying pronouns of third parties protected by Exemptions 6 and 7(C).
  - **First full paragraph**: all text except for the first eleven words of the last sentence of the paragraph, and names and related pronouns of third parties protected by Exemptions 6 and 7(C).
  - **Fourth full paragraph**: all text except for the final twenty-one words of the last sentence, and names and related pronouns of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-782**

  - **Fifth full paragraph**: all text except for the second sentence of the paragraph and names of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-783**

  - **First partial paragraph, and the first and second full paragraph**: all text except for names and related pronouns of third parties protected by Exemptions 6 and 7(C).
  - **Final partial paragraph**: all text except for the last six words of the partial paragraph and names and related pronouns of third parties protected by Exemptions 6

and 7(C).

- **Rubashkin-784**

  - **First partial paragraph**: all text except for the first word of the partial paragraph; the second full sentence of the partial paragraph; the seventh and eighth words of the last sentence of the partial paragraph; and names and related pronouns of third parties protected by Exemptions 6 and 7(C).
  - **First full paragraph**: all text except for the last sentence of the paragraph and names and related pronouns of third parties protected by Exemptions 6 and 7(C).
  - **Second, fifth, and sixth full paragraphs**: all text except for names and related pronouns of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-785**

  - **First paragraph**: all text except for the first sentence of the paragraph and the third word in the sixth line of the paragraph.
  - **Second paragraph:** all text except for the entire first line of the paragraph; the second through fifth words in the third line of the paragraph; the fourth through sixth words in the seventh line of the paragraph; the entire ninth and tenth lines of the paragraph; and names and related pronouns of third parties protected by Exemptions 6 and 7(C).
  - **Third paragraph:** all text except for the second sentence of the paragraph; the last three words in the tenth line of the paragraph; the entire fourteenth and fifteenth lines of the paragraph; and names, related pronouns, relationship and professional titles, and identity data of third parties protected by Exemptions 6 and 7(C).
  - **Final partial paragraph:** all text except for the last nine words of the second line of the partial paragraph; the entire last line of the partial paragraph; and names and related pronouns of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-786**

  - **First partial paragraph:** all text except for the first partial sentence of the paragraph; the ninth word in the fourth line of the paragraph; the first two words in the fifth line of the paragraph; the last sentence of the paragraph; and names, related pronouns, and professional titles/job identifiers of third parties protected by Exemptions 6 and 7(C).
  - **First full paragraph:** all text except for the first sentence of the paragraph; the fifth through tenth word in the sixth line of the paragraph; the first two words in the seventh line of the paragraph; the last three words in the eighth line of the paragraph; the last three words in the ninth line of the paragraph; the first two words of the tenth line of the paragraph; and names, related pronouns, and professional titles/job identifiers of third parties protected by Exemptions 6 and 7(C).

- o **Second full paragraph:** all text except for the entire sixth and seventh lines of the paragraph; the last sentence of the paragraph; and names and related pronouns of third parties protected by Exemptions 6 and 7(C).
- o **Final partial paragraph:** all text except for names, related pronouns, and relationship and professional titles of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-787**

  - o **First partial paragraph:** all text except for names and related pronouns of third parties protected by Exemptions 6 and 7(C).
  - o **First full paragraph:** all text except for the entire fourth and fifth line of the paragraph; the first five words of the sixth line; the entire seventh and eighth lines; the first word of the ninth line; the sixth sentence of the paragraph; the entire fifteenth line of the paragraph; the first four words in the sixteenth line of the paragraph; and names and related pronouns of third parties protected by Exemptions 6 and 7(C).
  - o **Second full paragraph:** all text except for names and related pronouns of third parties protected by Exemptions 6 and 7(C).
  - o **Final partial paragraph:** all text except for the first two sentences of the partial paragraph; the fifth and sixth sentences of the partial paragraph; and names, related pronouns, and professional and relationship titles of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-788**

  - o **First full paragraph:** all text except for the third through tenth words in the second line of the paragraph; the third through seventh words in the sixth line of the paragraph; and names and related pronouns of third parties protected by Exemptions 6 and 7(C).
  - o **Second full paragraph:** all text except for the second sentence and names and related pronouns of third parties protected by Exemptions 6 and 7(C).
  - o **Third full paragraph:** all text except for names and related pronouns of third parties protected by Exemptions 6 and 7(C).
  - o **Final partial paragraph:** all text except for names and related pronouns of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-789**

  - o **First partial paragraph:** all text except for names, related pronouns, and professional titles/job identifiers of third parties protected by Exemptions 6 and 7(C).
  - o **First full paragraph:** all text except for the second through eighth sentences of the paragraph and names and related pronouns of third parties protected by Exemptions 6 and 7(C).

- **Second full paragraph:** all text except for the fifth sentence of the paragraph and names, related pronouns, and professional titles/job identifiers of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-790**

    - **First full paragraph:** all text except for the third through eighth words in the first line of the paragraph; the first five words of the fifth line of the paragraph; the last three words of the seventh line of the paragraph; the first eight words of the eighth line of the paragraph; the last sentence of the paragraph; and names, related pronouns, and professional titles/job identifiers of third parties protected by Exemptions 6 and 7(C).
    - **Second full paragraph:** all text except for the last six words of the first sentence of the paragraph and names and related pronouns of third parties protected by Exemptions 6 and 7(C).
    - **Third full paragraph:** all text except for the fourth through ninth words of the first sentence; the last two words in the third line of the paragraph; the last four words in the fourth line of the paragraph; the entire last line of the paragraph; and names and related pronouns of third parties protected by Exemptions 6 and 7(C).
    - **Final partial paragraph:** all text except for the entire second line of the paragraph; the last three words in the fourth line of the paragraph; the entire fifth line of the paragraph; and names, related pronouns, and professional titles of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-791**

    - **First partial paragraph:** all text except for names and related pronouns of third parties protected by Exemptions 6 and 7(C).
    - **First full paragraph:** all text except for fourth through seventh words in the fifth line of the paragraph; the last seven words of the sixth sentence of the paragraph; and names, related pronouns, and professional titles/job identifiers of third parties protected by Exemptions 6 and 7(C).
    - **Final partial paragraph:** all text except for the last six words of the first line of the paragraph; the first four words of the second line of the paragraph; the last two words of the fourth line of the paragraph; the first three words of the fifth line of the paragraph; the eighth and ninth words in the eleventh line of the paragraph; the last ten words in the seventh sentence of the paragraph; the first three words and the seventh through tenth words in the fifteenth line of the paragraph; and names, related pronouns, and professional titles/job identifiers of third parties protected by Exemptions 6 and 7(C).

- **Rubashkin-792**

- o **First partial paragraph:** all text except for the last nine words of the sentence and names, related pronouns, and professional titles of third parties protected by Exemptions 6 and 7(C).
- o **First full paragraph:** all text except for names and related pronouns of third parties protected by Exemptions 6 and 7(C).
- o **Second full paragraph:** all text except for the last eight words of the second line of the paragraph; the entire last three lines of the paragraph; and names and related pronouns of third parties protected by Exemptions 6 and 7(C).
- o **Third full paragraph:** all text except for names and related pronouns of third parties protected by Exemptions 6 and 7(C).
- o **Fourth full paragraph:** all text except for names and related pronouns of third parties protected by Exemptions 6 and 7(C).